2000 SD 150

**Troy W. MATTIS, Plaintiff and Appellant,**

v.

**WEAVER ELECTRIC, INC. and IMT Insurance Company, Defendants and Appellees.**

**No. 21433.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 25, 2000.

Decided Dec. 6, 2000.

Michael F. Marlow and Sheila S. Woodward of Johnson, Heidepriem, Miner, Marlow and Janklow, Yankton, Attorneys for plaintiff and appellant.

Timothy A. Clausen of Klass, Stoik, Mugan, Villone, Phillips, Orzechowski, Clausen & LaPierre, LLP, Sioux City, IA, Attorneys for defendants and appellees.

SABERS, Justice

[¶ 1.] In this case, employee and employer stipulate to the material facts. The issue is whether Troy Mattis is automatically entitled to total permanent disability benefits after establishing that he suffers

from an occupational disease as defined in SDCL chapter 62–8. The administrative law judge and the circuit court determined that Mattis must obtain a separate disability determination under SDCL chapter 62–4 prior to receiving workers' compensation benefits. We agree and affirm.

## FACTS

[¶ 2.] Mattis began working for Weaver Electric Inc. (Weaver) in May of 1994 as an apprentice electrician. His job duties consisted of assisting journeymen electricians in the wiring of residential homes. In July 1995, while working for Weaver, Mattis used Carlon Quick Set PVC cement to glue PVC conduits together. For three consecutive days Mattis was required to apply the PVC cement while working in a waist deep trench. Mattis complained of headaches and nausea after using the PVC cement. On Friday, July 15, 1995, Mattis again used PVC cement at another job site. Over the weekend the headaches and nausea continued and Mattis began experiencing chest pains. That Sunday, Mattis went to the hospital after experiencing difficulty catching his breath when walking from his couch to the refrigerator.

[¶ 3.] Mattis was admitted to the Wagner Community Memorial Hospital on July 18, 1995. He was seen by Dr. Scott Weber and was initially assessed as suffering from bi-lateral pneumonia, exposure to PVC glue fumes, being overweight, and hypoxia. Mattis was discharged on July 23, 1995 but his condition remained unchanged except for improved pulmonary status.

[¶ 4.] Still suffering from breathing discomfort, Mattis visited Dr. Lori Hansen on September 28, 1995. Dr. Hansen diagnosed Mattis as suffering from either reactive airway disease or asthma. A subsequent test confirmed that Mattis had reactive airway disease.[1]

[¶ 5.] Dr. Hansen found that Mattis suffered "a twenty percent permanent impairment to his whole person as a result of his reactive airway disease." Mattis was instructed to avoid smoke, dust, chemical odors, extreme temperatures and physical exertion. Mattis attempted to work again as an electrician's apprentice for another company doing substantially the same type of work as he had done with Weaver. He was unable to perform the required tasks without getting sick or experiencing difficulty breathing. After leaving the workforce his condition improved.

[¶ 6.] Mattis again attempted to return to employment, this time as a corrections officer. However, based upon the advice of his doctor, he left this position as he was unable to avoid temperature extremes. Mattis has not worked full time since July 31, 1997. His condition is irritated by "cleaning materials, perfumes, potpourri, dust, humidity and temperature extremes." Both parties have stipulated that Mattis "developed reactive airways disease as a result of being exposed to the PVC glue while working as an electrician for [Weaver]" and Mattis "suffers from an occupational disease as defined in SDCL 62–8—1(6)."

[¶ 7.] Mattis filed a petition for hearing with the South Dakota Department of Labor requesting compensation, medical expenses and hospital expenses as a result of an occupational health injury. The administrative law judge determined that Mattis was entitled to compensation under the workers' compensation statutes in SDCL chapter 62–4, which requires Mattis to demonstrate his level of disability. The circuit court affirmed. Mattis appeals contending that SDCL 62–8–1(3) and 62–8–4 establish that if an employee has an occupational disease, and is unable to return to his prior occupation, the employee is deemed to suffer a total disability and no further inquiry is warranted.

---

1. The findings of fact state that "[t]he ingredients of the quick set cement are known to cause reactive airways disease following exposure. Dr. Hansen is of the opinion that the exposure to the cement caused the development of [Mattis'] reactive airway disease."

## STANDARD OF REVIEW

 [¶ 8.] The issue on appeal involves a question of statutory interpretation. "Statutory interpretation is a question of law, which we review de novo." *In Re Estate of Klauzer*, 2000 SD 7, ¶ 22, 604 N.W.2d 474, 479. Additionally, when reviewing workers' compensation statutes it is "a general rule that [they] should be liberally construed in favor of injured employees." *Moody v. L.W. Tyler Custom Combiners*, 297 N.W.2d 179, 180 (S.D. 1980). However, "we will not liberally construe a statute to avoid a seemingly harsh result where such construction would do violence to the plain meaning of the statute." *Heupel v. Imprimis Tech. Inc.*, 473 N.W.2d 464 (S.D.1991) (citations omitted).

[¶ 9.] **WHETHER AN EMPLOYEE IS AUTOMATICALLY ENTITLED TO TOTAL PERMANENT DISABILITY BENEFITS AFTER ESTABLISHING THAT HE SUFFERS FROM AN OCCUPATIONAL DISEASE AND IS UNABLE TO RETURN TO HIS PRIOR OCCUPATION.**

██ [¶ 10.] Mattis asserts that as a matter of law he is entitled to workers' compensation benefits calculated as though he is totally disabled because he suffers from an occupational disease.[2] He reaches this conclusion by asserting that the legislature has deemed an occupational disease the equivalent of a total disability under SDCL chapter 62–8. This interpretation is flawed.

██ [¶ 11.] SDCL 62–8–1 states that "disablement" as used in SDCL chapter 62–8 means:

[T]he event of an employee's becoming actually and totally incapacitated, because of an occupational disease as defined in this chapter, from performing his work in the last occupation in which injuriously exposed to the hazards of such disease. *'Disability,' 'disabled,' 'total disability,' 'totally disabled,' or 'total disablement' shall be synonymous with 'disablement.'*

(Emphasis added). Mattis concludes that the last sentence of this definition supports the proposition that "disablement" is the equivalent of "total disability" and "totally disabled." This position fails to take into account that "disablement" is also synonymous with "disability" and "disabled." While the terms "disability, disabled, total disability, and totally disabled" are deemed synonymous with "disablement" as utilized in SDCL chapter 62–8, they are not synonymous with each other. These terms recognize the distinction under workers' compensation jurisprudence between "total" and "partial" disability. The mere reference to "total disability" and "totally disabled" as well as "disability" and "disabled" acknowledge that something less than "total disability" or "totally disabled" exist.

[¶ 12.] The legislature has chosen to refer to these distinctive levels of disability by the shorthand term "disablement" in SDCL chapter 62–8 instead of parsing out the varying degrees of disability under our workers' compensation statutes. The definition of "disablement" includes more than "total disability" and continues to recognize the distinctions between "partial" and "total" disabilities contained in the workers' compensation provisions.[3]

---

2. SDCL 62–8–1(6) defines occupational disease as "a disease peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment and includes any disease due or attributable to exposure to or contact with any radioactive material by an employee in the course of his employment."

3. Mattis cites foreign authority to support his proposition that "disablement" equates only with "total disability." *Vincent v. United Nuclear–Homestake Partners*, 89 N.M. 704, 556 P.2d 1180, 1183 (1976). Yet the difference in definitions of "disablement" under the New Mexico system, upon which Mattis relies, and SDCL 62–8–1(3) defeats this position. *See id.* (defining "disablement" as "total physical in-

[¶ 13.] This very distinction is recognized by SDCL 62–8–17. That statute provides "[i]n the event a totally disabled employee shall engage in any renumerative work for any other employer, he shall thereby waive disability benefits or compensation under this chapter for such period as he is so engaged." SDCL 62–8–17. The use of the term "totally disabled" by the legislature reflects the understanding that something less than "totally disabled" exists under SDCL chapter 62–8. By singling out only those employees who are "totally disabled" as the result of an occupational disease, the statute implicitly acknowledges that a worker may suffer from an occupational disease and not be "totally disabled."

[¶ 14.] This interpretation is supported by SDCL 62–8–4 which incorporates workers' compensation law into the Occupational Disease Disability Chapter. That statute provides in relevant part:

> Where an employee of an employer subject to this chapter suffers from an occupational disease as defined in § 62–8–1, and is thereby disabled from performing his work in the last occupation in which he was injuriously exposed to the hazards ... and the disease was due to the nature of an occupation or process in which he was employed ... the employee ... *shall be entitled to compensation as provided in the workers' compensation law, as if such disablement or death were an injury by accident, except as otherwise provided in this chapter; and the practice and procedure prescribed in the workers' compensation law shall apply to proceedings for compensation for such diseases, except as in this chapter otherwise provided.*

SDCL 62–8–4 (emphasis added). In accord with this statute the parties have stipulated that Mattis suffers from an occupational disease and is entitled to compensation. The remaining dispute is the manner these benefits will be determined. The statute clearly answers the question:

capacity by reason of an occupational dis-

"as provided in the workers' compensation law ." *Id.* Additionally, in making this determination, "the practice and procedures prescribed in the workers' compensation law shall apply to proceedings for compensation for such diseases." *Id.*

[¶ 15.] This statutory language clearly incorporates the provisions of SDCL chapter 62–4 (Compensation for Injury or Death) into SDCL chapter 62–8 (Occupational Disease Disability). This statutory language defeats Mattis' position that a claimant suffering an occupational disease is automatically treated as totally disabled. The workers' compensation provisions of SDCL chapter 62–4 clearly distinguish between partial, total permanent and temporary disabilities. *See* SDCL 62–4–5 (compensation for partial disability); SDCL 62–4–3 (amount of temporary total disability compensation); SDCL 62–4–7 (compensation for permanent total disability).

[¶ 16.] Mattis asserts that resort to the compensation provisions contained in SDCL chapter 62–4 will in effect force him to prove his disability twice. However, the statutory process simply requires Mattis to 1.) prove that he suffers from an occupational disease as defined in SDCL chapter 62–8 and then 2.) prove the extent of his disability to establish the level of benefits to be provided. We acknowledge that these requirements may entail some overlapping evidence, but the legislature has provided two distinctly unique steps that must be followed to obtain these benefits.

¶ 17. Affirmed.

¶ 18. MILLER, Chief Justice, and AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.