Unified Judicial System

 

 
 Allan Arends
Claimant and Appellee, v.
Dacotah Cement
Employer/Self-Isurer, Appellant,
 and 
Berkley Administrators  [2002 SD 57]
South Dakota Supreme Court
Appeal from the Circuit Court of The Sixth Judicial Circuit
Hughes County, South Dakota
Hon. Steven L. Zinter, Judge
Ronald L. Schulz of Green, Shulz, Roby, Oviatt, Cummings & Linngren Watertown, South Dakota
Attorneys for claimant and appellee.
 
Talbot J. Wieczorek of Gunderson, Palmer, Goodsell & Nelson Rapid City, South Dakota
Attorneys for employer/Self-Insurer/appellant.
 
Considered on Briefs February 11, 2002
Opinion Filed 5/15/2002
#22081, #22084
GILBERTSON, Chief Justice
[Â¶1.]               Allan Arends (Arends), employed by South Dakota State Cement Plant Commission d/b/a Dacotah Cement (Dacotah) for over 30 years, fell through some ice and sustained an acute knee injury while he was out trapping muskrat.  When surgery was performed, it was discovered that Arends had degenerative osteoarthritis.  Both the Department of Labor (Department) and the circuit court determined that there was a work-related injury, which was a major contributing cause of the physical impairment.  Arends was awarded benefits under South Dakota workersâ compensation law.  We affirm. 
FACTS AND PROCEDURE
[Â¶2.]               Arends began working for Dacotah in 1974, after spending time in the military and working for other concrete, steel and construction companies.  While working for Dacotah, one of Arendsâ primary duties as manager at the Watertown terminal was to unload rail cars.  This, in turn, required repetitive stooping and kneeling on concrete.
[Â¶3.]               Additionally, Arends had several hobbies, including working on cars, hunting, fishing, and trapping.  These hobbies also required a significant amount of stooping and kneeling.  On November 17, 1996, while out trapping muskrat, Arends fell through the ice with his left leg.  The fall brought Arendsâ entire body weight down on his right knee.  The pain was instant and Arends heard a âclickingâ noise in his knee.  He had difficulty walking and his knee became swollen.
[Â¶4.]               On November 25, 1996, one week after the accident, Arends saw Dr. Terry L. Seeman.  Due to Arendsâ inability to flex his knee since the time of the accident, Dr. Seeman recommended crutches and an MRI.  The MRI revealed  thinning throughout the meniscal cartilage, as well as erosions or spurs on the back of the patella.  Dr. Seeman advised Arends not to return to work until he was off the crutches.  On January 9, 1997, Dr. Seeman performed arthroscopic surgery which basically revealed:  (1) an acute injury amounting to torn medial meniscus cartilage; and (2) a cumulative or chronic injury amounting to global thinning or degeneration of the cartilage and patella.  Dr. Seeman stated:  
The type of surface damage that he had is not something you would normally see in a 48[-]year[-]old who has a white collar or sit-down type of job.  I mean, itâs just not that badly damaged as his was.
 
When asked what would cause that type of injury, Dr. Seeman replied that âit would have to be some type of repetitive trauma to the kneecap.â  Dr. Seeman concluded that the fall through the ice could have caused the tear, but that the degenerative osteoarthritis was largely a result of an accumulation of small injuries brought on by the repetitive strain or exertion of Arendsâ work activities.  He stated that the evidence taken from the history of the patient, the MRI and the surgery all indicate that Arendsâ work activity was âa major contributing cause . . . or contributing insult to the knee.â
[Â¶5.]               Dr. Peter A. Looby, an expert hired by Dacotah, also examined Arends and diagnosed degenerative osteoarthritis of mild to moderate degree in both knees.  Dr. Looby indicated that the progressive illness was âmultifactorialâ caused by genetic predisposition, wear and tear, and possibly aggravation from an acute trauma.  
I believe his work was a contributing cause.  His work involved standing on concrete, a lot of stooping, bending, lifting, those kinds of activities.  And just as his recreational activities probably contributed to the development of osteoarthritis, probably so did his work environment.
  
Dr. Looby then stated that the condition essentially amounts to âan accumulation of small traumas and wear and tear on the joints.â    
[Â¶6.]               Arends reached maximum medical improvement on March 6, 1998.  Because he could no longer perform his job, Dacotah required Arends to draw sick leave from April 22, 1997, to December 2, 1997.
[Â¶7.]               Department held a hearing on July 26, 2000, and determined that Arends had a 17 percent impairment in his lower right extremity, that Arendsâ work activities were a major contributing cause of the impairment, and that Arends was entitled to workersâ compensation benefits.  The Hearing Officer awarded Arends temporary total disability benefits for the period in which he was required to draw sick leave.  The Hearing Officer also determined, under the odd-lot doctrine, that Arends was entitled to permanent total disability benefits because of his condition, level of education, training, and age.  Finally, the Hearing Officer denied Arendsâ claim for the penalty provided in SDCL 62-4-10.1 on the ground that a good-faith dispute between the parties did exist.  
[Â¶8.] Dacotah appealed this decision to the circuit court.  While the court affirmed the decision of Department on July 6, 2001, it did overrule the Hearing Officerâs finding of fact that Arendsâ condition had not been worsened by the fall through the ice.  The court concluded that this finding was clearly erroneous.  Notwithstanding this determination, the circuit court upheld Departmentâs ruling that a work-related injury was a major contributing cause of Arendsâ disability.  The circuit court also concluded that the last injurious exposure rule under SDCL 62-1-1(7)(c) did not apply because âthis is not a case where subsequent employers are arguing over which one should be on the risk.â  Finally, the court affirmed the Hearing Officerâs determination that a good-faith dispute did exist and, therefore, Arends was not entitled to a penalty under SDCL 62-4-10.1.  
[Â¶9.]               Dacotah now appeals to this Court raising the following issues:
1.      Whether Arends suffered a work-related injury, which was a major contributing cause of the condition complained of.
 
2.      Whether the last injurious exposure rule applies where there is no âsubsequent employment.â
 
By Notice of Review, Arends raises the following issue for appeal:
3.      Whether there is an absence of a good-faith dispute, entitling Arends to the penalty provided in SDCL 62-4-10.1.
 
STANDARD OF REVIEW
[Â¶10.]  We review administrative decisions, such as those of Department, pursuant to the standard set forth in SDCL 1-26-36.  We must give great weight to the agencyâs findings of fact and overturn such findings only where they are clearly erroneous.  Gilchrist v. Trail King Indus., Inc., 2000 SD 68, Â¶4, 612 NW2d 1, 3 (citations omitted).  âOnly if after a review of the entire record we are definitely and firmly convinced a mistake has been committed will we reverse.â  Id.  (citations omitted).  Conversely, findings of fact based solely upon deposition testimony are reviewed de novo.  Goebel v. Warner Transp., 2000 SD 79, Â¶10, 612 NW2d 18, 21 (citations omitted).  When the issue is a question of law, we review the decisions of both the administrative agency and the circuit court de novo.  Butte County v. Vallery, 1999 SD 142, Â¶8, 602 NW2d 284, 286-87.
[Â¶11.]             This case also involves statutory interpretation which, as a question of law, is reviewed by this Court de novo.  Steinberg v. S.D. Depât of Military and Veterans Affairs, 2000 SD 36, Â¶6, 607 NW2d 596, 599.  âWords and phrases in a statute must be given their plain meaning and effect.  When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed.â  Martinmaas v. Engelmann, 2000 SD 85, Â¶49, 612 NW2d 600, 611 (quoting Moss v. Guttormson, 1996 SD 76, Â¶10, 551 NW2d 14, 17) (additional citations omitted)).   
ANALYSIS AND DECISION
 
[Â¶12.] 1.       Whether Arends suffered a work-related injury, which 
was a major contributing cause of the condition 
complained of.
 
[Â¶13.]             âIn order to collect workerâs compensation benefits, [Arends] must establish a causal relationship between his injury and his employment.â  Gilchrist, 2000 SD 68 at Â¶7, 612 NW2d at 3-4 (citing Kester v. Colonial Manner of Custer, 1997 SD 127, Â¶17, 571 NW2d 376, 380 (additional citation omitted)).  SDCL 62-1-1 provides the definition of âinjuryâ for the purposes of South Dakota workersâ compensation.  
Terms used in this title, unless the context otherwise plainly requires, shall mean:  * * *
 
7) "Injury" or "personal injury," only injury arising out of and in the course of the employment, and does not include a disease in any form except as it results from the injury.  An injury is compensable only if it is established by medical evidence, subject to the following conditions:
(a)   No injury is compensable unless the employment or employment related activities are a major contributing cause of the condition complained of; or
(b)   If the injury combines with a preexisting disease or condition to cause or prolong disability, impairment, or need for treatment, the condition complained of is compensable if the employment or employment related injury is and remains a major contributing cause of the disability, impairment, or need for treatment.
(c)    If the injury combines with a preexisting work related compensable injury, disability, or impairment, the subsequent injury is compensable if the subsequent employment or subsequent employment related activities contributed independently to the disability, impairment, or need for treatment.  * * *
 
SDCL 62-1-1(7) (emphasis added).  Thus, Arends must prove: (1) that his injury was work-related; and (2) that the work-related injury was a major contributing cause of the condition complained of, which is the physical impairment.  âThis causation requirement does not mean that the employee must prove that [his] employment was the proximate, direct, or sole cause of [his] injury; rather the employee must show that [his] employment was a âcontributing factorâ to [his] injury.â  Gilchrist, 2000 SD 68 at Â¶7, 612 NW2d at 4 (quoting Kester, 1997 SD 127 at Â¶17, 571 NW2d at 380 (additional citation omitted)) (alterations and emphasis in original).
[Â¶14.]             As recognized by Department and the circuit court in this case, the medical evidence does establish that Arends suffered work-related injuries. 
The injury is the act or omission that causes the loss.  Grauel v. S.D. Sch. of Mines and Tech., 2000 SD 145, Â¶9, 619 NW2d 260, 263 (citing Steinberg, 2000 SD 36 at Â¶10, 607 NW2d at 600).  In this case, one injury, the fall through the ice, did not occur during Arendsâ performance of his job.  But many others did.  In fact, the medical evidence indicates that Arends suffered a series of injuries over the thirty-year period, which manifested in a degenerative disorder.  The arthroscopic surgery, admittedly done in response to Arendsâ fall through the ice, merely hastened discovery of the damage caused by these injuries.
[Â¶15.]             In Grauel, we determined that the claimant had not established, by a preponderance of medical evidence, that his employment was a major contributing cause of the physical impairment.  Id. at Â¶Â¶19-21.  There, the treating physician could offer no opinion as to whether he believed the degenerative condition in the claimantâs knee had happened over time or all at once.  Id. at Â¶20.  He also assumed that because the injury happened at work, it was âipso facto work-related.â  Id. at Â¶19.  Moreover, the employerâs expert, after an independent medical examination, concluded that the degenerative osteoarthritis was a preexisting condition that caused the disability, unrelated to the claimantâs work activities.  Id. at Â¶21.  In reviewing the deposition testimony and medical evidence, we concluded that the claimant had not carried his burden of showing that his employment was a major contributing cause of his disability  
[Â¶16.] In this case, however, we agree with both Department and the circuit court that the repeated work-related trauma to Arendsâ knee was a major contributing cause of the condition complained of.  The condition, or loss produced by the injury, is the physical impairment caused by Arendsâ degenerative osteoarthritis.  See id. at Â¶9.  Findings taken from MRI, arthroscopic surgery, and the examinations of both doctors demonstrate to a reasonable medical probability that Arendsâ chronic condition was not caused by one acute injury; rather, it was caused by the cumulative trauma from years of bending, stooping and kneeling on concrete.  See Truck Ins. Exch. v. CNA, 2001 SD 46, Â¶19, 624 NW2d 705, 709. Therefore, unlike the claimant in Grauel, Arends has met his burden of demonstrating that the repetitive work at Dacotah caused him injuries which, in turn, were a major contributing cause of his disability.  Given this evidence, we are not firmly convinced that a mistake has been made and we will not overturn the Departmentâs ruling.  
[Â¶17.] 2.       Whether the last injurious exposure rule applies where 
there is no âsubsequent employment.â
          
[Â¶18.]             While South Dakota has adopted the last injurious exposure rule, we agree with the circuit courtâs conclusion that the rule does not apply in this case.  See SDCL 62-1-1(7)(c).  See also Enger v. FMC, 1997 SD 70, Â¶12, 565 NW2d 79, 83 (stating âSouth Dakota has adopted the âlast injurious exposure ruleâ when considering successive injuries.â) (citations omitted).  The statute provides:
If the injury combines with a preexisting work related compensable injury, disability, or impairment, the subsequent injury is compensable if the subsequent employment or subsequent employment related activities contributed independently to the disability, impairment, or need for treatment.
 
SDCL 62-1-1(7)(c).  Arends may have âa preexisting work related compensable injury, disability, or impairmentâ and a âsubsequent injury,â but he does not have âsubsequent employment.â
[Â¶19.]             â[W]orkersâ compensation statutes should be applied without defeating the purpose of the overall statutory scheme.â  Grauel, 2000 SD 145 at Â¶14, 619 NW2d at 264 (citation omitted).  The Legislature intended this section of the statute to settle disputes between two or more employers or insurers.  Application of the doctrine to the facts of this case would not advance this purpose.  Here, we have a dispute between the employer and employee to determine whether the employer-caused injuries or the employee-caused injury is responsible for the condition.  But such disputes are already settled under the causation portion of the analysis.  Therefore, there is no need to reach the last injurious exposure rule.
[Â¶20.] 3.       Whether there is an absence of a good-faith dispute, 
entitling Arends to the penalty provided in SDCL 
62-4-10.1.
 
[Â¶21.]             Arends claims that because Dacotah wrongfully failed to pay his claim for benefits within ten days, it should be subject to the penalty provision of SDCL 62-4-10.1.  However, this Court has also held that the penalty is appropriate only in the absence of a good-faith dispute.  See Tischler v. United Parcel Serv., 1996 SD 98, Â¶77, 552 NW2d 597, 609.  Herein, Dr. Seeman did not initially express the opinion that Arendsâ work was a âmajor contributing causeâ of the disability because he was not asked the question until his second deposition.  Moreover, Dr. Looby continually maintained that, while he believed Arendsâ work-related activities were a contributing cause, he was unable to say whether it was a âmajorâ contributing cause.  Liability depended upon the credibility of the testimony in light of the evidence.  As the circuit court noted, there is no indication âof an abuse of discretion on the Hearing Examinerâs finding of a good-faith dispute.â  Therefore, we affirm.
[Â¶22.] SABERS and KONENKAMP, Justices, and GORS, Acting Justice, concur.
[Â¶23.] AMUNDSON, Justice, concurs in part and dissents in part.
[Â¶24.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court, and being the trial judge in this case, did not participate.
 
AMUNDSON, Justice (concurring in part and dissenting in part).
 
 [Â¶25.] Although I fully recognize that this Court is obligated to liberally construe coverage in workersâ compensation cases, the majority opinion simply goes too far.  See Mattis v. Weaver Electric, Inc., 2000 SD 150, Â¶8, 619 NW2d 526, 528; Faircloth v. Raven Indus., Inc., 2000 SD 158, Â¶16, 620 NW2d 198, 203.  During his first deposition, Dr. Seeman testified that Arendsâ job was a contributing cause of his knee injury, not a major contributing cause.[1]   Next, on May 18, 2000, his second deposition took place where counsel for the claimant led the good doctor through these troubled waters to get to the right answer.[2]   
[Â¶26.] Additionally, Dr. Looby, who examined Arends, testified that Arendsâ job and fall through the ice both contributed to the condition, but he could not opine that it was the major contributing factor.  More importantly, Arendsâ degenerative knee problems never kept him from working prior to his fall though the ice; he did 
not limp prior to the fall through the ice; and he did not seek medical attention for his knee problems prior to his fall through the ice.  The equivocal medical testimony and lack of prior knee problems, in conjunction with Arendsâ history of physically active pastimes, like car repair, hunting, fishing and trapping, make it, in my opinion, pure speculation to conclude that Arendsâ job was a major contributing cause of injury after review of this record. 
[Â¶27.] If we hold Arendsâ job was the major contributing cause, we are, in my opinion, establishing a totally unacceptable liberal precedent.  Any employee with a degenerative condition who has a history of manual labor, and who rock climbs, snow or water skis, or takes part in any other physically taxing activity will be able to fall back on alleged work-related physical wear and tear after a traumatic occurrence off the job.  There is no doubt that doing repetitive manual labor will have some impact on oneâs body as time passes, but as time passes, we all go through normal wear and tear degenerative processes.  Just the fact that there is a degenerative condition does not justify imposing liability on workersâ compensation coverage.  Therefore, I dissent on the coverage issue.  It goes without saying that I concur with the majority that there was a good-faith dispute.
 

 1.         The following is a response by Dr. Seeman from his deposition on August 12, 1999:
 
Q.        Back to, when we were discussing the November of â96 injury, had he not fallen through the ice at that time . . . it appears from all of his records he would have been working and never seen a doctor about the knee problems, or maybe mentioned it once or twice, but had not seen anybody for treatment.  Had he not fallen through the ice in November of â96, you would agree that he probably could have kept working without restrictions at least for some time period?
 
            A.        My opinion of Mr. Arends is that he was a good worker.  He did what he was told.  He may have been having pain of a certain type, certain amount of stiffness when he worked.  So itâs hard â You know, I would say that if he hadnât fallen through the ice and had that rather, you know, that rather kind of violent direct blow to his knee, he probably would have continued to do what he was doing.  I think it would have eventually caught up with him with some type of injury, either at home or at work, but, you know, thatâs hard to say.  (emphasis added).  [But later on it is not hard for him to say that work was a major contributing factor.] 

 2.         Dr. Seemanâs second deposition stated the following: 
 
Q.        Doctor, would you state your name, please?
 
                        A.        Dr. Terry Lee Seeman.
 
Q.        And, Doctor, for your information, this is a supplemental 
deposition to your deposition that was taken on August 12, 1999, regarding Al Arends.  Do you recall that deposition being taken at that time?
 
A.        Yes. 
 
Q.        At that time, I asked you this question:  . . . 
âIf I hear you correctly based on the history you took and your findings on the surgery that you performed, and based on the information you obtained from the patient, itâs your opinion based upon a reasonable degree of medical certainty that the arthritic conditions and this knee problem of Mr. Arendsâ is a result of his work with Dacotah Cement.â  
Your answer was:  
âIt would be my opinion that without information to the contrary, that would be the likely cause of his degenerative changes noted at the time of the surgery.â
That was the end of your answer.  And that gave me a little bit of concern, Doctor, so because of subsequent inquiries made by counsel representing Dacotah Cement, additional information has been obtained and I have the following question for you, Doctor.
            Doctor, based upon the history you took during the time that you were providing medical services to Mr. Arends and your findings during the surgery that you performed, is it your opinion based upon a reasonable degree of medical certainty, that the work that Mr. Arends was performing with Dacotah Cement was a major contributing cause of Mr. Arendsâ arthritic conditions in his current knee problems?
            And I want you to assume the following facts:  That in the mid to late 1970âs, and thereafter, Mr. Arends did body work on vehicles consisting of changing fenders, changing doors, and minor repairs in the shop in his home.  And that he would probably work on or restore approximately eight vehicles a year, and the nature of that work was body work and painting where he would occasionally have to get on a creeper and get underneath the car.  He would put the cars up on jack stands so that he could get underneath the cars on the creeper.  And further assume, Doctor, that approximately 12 years ago, Mr. Arends helped change a clutch in a vehicle in his garage, where he had to possibly get down on his knees and also under the vehicle on a creeper to accomplish the job.
            Further assume that during the period of 1990 through 1996, Mr. Arends worked on two cars and one pickup.  One car was a 1988 Volv[o] on which he replaced fenders, radiator support, grill, repaired the right quarter panel and painted the car.  The other vehicle was a 1991 Chevrolet in which he replaced a hood, two fenders, radiator support, bumper, and painted the front.  The other vehicle that Mr. Arends worked on was a 1982 Ford pickup, on which he replaced rocker panels and repaired rust on the back of the cab.
            Also assume that during the time that Mr. Arends was working on vehicles, he has not sustained any type of injury, never had a car fall on him, nor did he injure his knees or back.
            And further assume that beginning in approximately 1973, Mr. Arends did some trapping of fur bearers, as sort of a hobby two to three weeks during the winter months at the most.  And while he was trapping, he would generally bend over to place the traps.  For the years 1990 to 1995, he did no trapping, nor has he been trapping since his surgery in January of 1997.  
            And further assume that Mr. Arends from time to time has done some fishing from a boat and some hunting of pheasant and deer but has never been injured while hunting or fishing.
            End of question, Doctor.
 
A.        The physical findings taken operatively demonstrated that he 
had evidence of chronic disease within his right knee.  Chronic disease meaning that itâs âIt wasnât one acute injury that caused the damage that we observed in surgery.  Part of this, the chronic nature of his knee condition according to the patient, he had a lot of squatting and kneeling, kneeling on concrete at work.  And, therefore, that would be a major contributing . . . [c]ause of, or a contributing insult to his knee.   
                                    ***