#23528-a-JENSEN, Circuit Judge
**2006 SD 5**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

DANIEL HORN,                                    Claimant and Appellant,

    v.

DAKOTA PORK and WAUSAU
INSURANCE COMPANIES,                            Employer, Insurer and Appellees

    and

RIVERSIDE MANUFACTURING and
AIG CLAIMS SERVICES,                            Employer, Insurer and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JAMES W. ANDERSON
Judge

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 30, 2005

OPINION FILED 01/11/06

A. RUSSELL JANKLOW and
RONALD A. PARSONS, Jr. of
Johnson, Heidepriem, Miner,
Marlow & Janklow          Attorneys for claimant and
Sioux Falls, South Dakota     appellant Daniel Horn.

R. ALAN PETERSON and
STEVEN S. SIEGEL of          Attorneys for employer, insurer
Lynn, Jackson, Shultz & Lebrun   and appellee Dakota Pork and
Sioux Falls, South Dakota     Wausau Insurance Companies.

J. G. SHULTZ
JENNIFER L. WOLLMAN of        Attorneys for employer, insurer
Woods, Fuller, Shultz & Smith   and appellee Riverside
Sioux Falls, South Dakota     Manufacturing and AIG Claims
                              Service.

#23528

JENSEN, Circuit Judge

[¶1.]          Daniel Horn (Horn) appeals a circuit court decision affirming the South Dakota Department of Labor's (Department) determination that he sustained a short term compensable injury, but was not entitled to permanent disability benefits under the workers' compensation law.  We affirm.

FACTS AND PROCEDURE

[¶2.]          Horn was employed as a welder at Riverside Manufacturing (Riverside).  On Friday, July 7, 2000, during the workday, Horn bent over and experienced severe back pain when he attempted to straighten up.  Horn reported the injury to his supervisor and completed his workday.  He saw Jackie Siver (Siver), a physician's assistant, the following Monday.  Horn reported "increasing pain in his lower back especially with movement such as bending over."  Siver advised Horn that he should avoid twisting, lifting and bending motions and imposed a twenty pound lifting restriction.

[¶3.]          Horn was subsequently referred to Dr. Gail Benson (Dr. Benson), an orthopedic surgeon, for examination and treatment.  Horn reported experiencing back pain over the two to three weeks since injuring his back on July 7.  Dr. Benson ordered an MRI and continued the light duty restrictions.[1]  On September 27, 2002, Dr. Benson advised Riverside's workers' compensation carrier that Horn's complaints and symptoms at that time were related to the July 7, 2000, injury.

---

1.     For reasons which are unclear an MRI scan was never taken of Horn after Dr. Benson's examination.

[¶4.]    Horn continued to have back problems and pain, but did not receive further medical treatment for the condition.  Horn did not return to work at Riverside after the July 7, 2000, injury because Riverside had no positions available to accommodate his lifting and bending restrictions.  Horn began working part-time delivering newspapers in late 2000 and continued to work in that position at the time of the hearing before Department.  Horn applied for several full-time positions, but each involved repetitive lifting and bending duties that he did not believe his back could tolerate.

[¶5.]    For most of his adult life, Horn was engaged in heavy physical labor involving repetitive lifting, bending and stooping.   For twenty years he worked in the loading dock and icehouse at Armour and Co. ( Armour) lifting boxes of frozen meat.  He strained muscles in his back on three occasions and, after each injury, he was given muscle relaxants and returned to work within a few days.  After Armour closed in 1982, Horn drove a feed truck and loaded and unloaded sacks of feed for approximately two years.

[¶6.]    Horn began working in the casing department for Dakota Pork in 1984.[2]  In 1997 Horn injured his back lifting a sixty pound bag of salt at Dakota Pork.  Horn initially saw Siver for the back injury.  An MRI scan showed degenerative disc changes in Horn's low back.  Horn also consulted with Dr Joseph Cass (Dr. Cass), an orthopedic surgeon, concerning the low back injury.  Dr. Cass diagnosed Horn with mechanical low back pain and issued him a five percent whole

---

2.    Horn's duties in the casing department involved pulling casings, as well as twisting and bending.  Horn was transferred to a salting job after he developed problems with his hands from pulling casings.

body impairment rating. Horn received a workers' compensation settlement from Dakota Pork based upon the five percent impairment rating. Horn returned to work approximately two months after the injury and continued to work in a meat cutting position until Dakota Pork closed later in 1997.

[¶7.] Horn attended welding school after Dakota Pork closed and began working as a welder at Yale Manufacturing in early 1998. Yale closed shortly thereafter and Horn began his employment at Riverside in April 1998. Horn worked at Riverside until his injury in July 2000.

[¶8.] On January 17, 2001, following his injury at Riverside, Horn saw Dr. R. Farnham (Dr. Farnham), an Occupational Medical Specialist, for an independent medical examination ordered by Dakota Pork. Dr. Farnham diagnosed Horn with mechanical low back pain due to degenerative changes of the lumbosacral spine compatible with age rather than trauma. Dr. Farnham opined that Horn's current complaints were unrelated to the 1997 injury. He further determined that the July 7, 2000, injury temporarily exacerbated the mechanical low back pain, but was not the cause of his current impairment or disability. Dr. Farnham gave Horn a whole body impairment rating of five percent.

[¶9.] Riverside referred Horn to Dr. Benson for an independent medical examination on November 26, 2002. Dr. Benson diagnosed Horn with ankylosing spondylitis[3] and chronic low back pain. Dr. Benson opined in his written report that Horn's "current complaints are related to a condition called ankylosing

---

3.    Dr. Benson testified during his deposition that "ankylosing spondylitis" is a genetic arthritic condition which may affect the entire spine. The condition is progressive as a person ages and may eventually cause the spine to fuse together.

spondylitis." Dr. Benson further wrote that the July 2000 injury was not a major contributing cause of Horn's impairment or disability, but did cause a short term need for treatment.

[¶10.]     Horn filed a workers' compensation petition with Department on May 21, 2002, alleging that he suffered a compensable back injury arising from his employment at Riverside and Dakota Pork. At the hearing before Department, the parties stipulated to the admission of medical records, Independent Medical Examination Reports (IME Reports), correspondence and the depositions of Horn and Dr. Benson. Department determined that Horn sustained a compensable injury causing a short term need for medical treatment; but that the work injury was not a major contributing cause of his current disability.

[¶11.]     Horn appealed Department's decision to the circuit court which affirmed Department. Horn appeals to this Court arguing that Department and the circuit court erred in determining that his workplace injury was not a major contributing cause of his disability. Horn also argues that Riverside is responsible for his compensable workplace injury. This latter issue was not addressed below because it was determined that Horn did not have a compensable workplace injury.

STANDARD OF REVIEW

[¶12.]     The standard of review of an agency's decision is governed by SDCL 1-26-36 and ordinarily requires de novo review of questions of law and clearly erroneous review of findings of fact. Brown v. Douglas School Dist., 2002 SD 92, ¶9, 650 NW2d 264, 267. "When factual determinations are made on the basis of documentary evidence, however, we review the matter de novo, unhampered by the

clearly erroneous rule." *Id.* Since the record consists solely of documentary evidence and depositions, we give no deference to the decision of Department or the circuit court. Haynes v. McKie Ford, 2004 SD 99, ¶14, 686 NW2d 657, 661; Grauel v. South Dakota School of Mines and Technology, 2000 SD 145, ¶7, 619 NW2d 260, 262; Kurtz v. SCI, 1998 SD 37, ¶10, 576 NW2d 878, 882.

ANALYSIS AND DECISION

ISSUE

[¶13.] **Whether Department erred in determining that Horn's employment or work related injury was not a major contributing cause of his disability.**

[¶14.] Horn had the burden to prove by a preponderance of the evidence "all the facts essential to compensation." *Grauel*, 2000 SD 145, ¶11, 619 NW2d at 263 (quoting Westergren v. Baptist Hosp., 1996 SD 69, ¶10, 549 NW2d 390, 393). "Our law requires a claimant to establish that his injury arose out of his employment by showing a causal connection between his employment and the injury sustained." *Id.* (citations omitted). The employment need not be the direct nor proximate cause of the injury in order to establish this causal connection, but rather must be shown to be a contributing factor to the injury. *Id.*; Gilchrist v. Trail King Industries, Inc., 2000 SD 68, ¶18, 612 NW2d 1, 5-6. The claimant also must prove by a preponderance of medical evidence, that the employment or employment related injury was a major contributing cause of the impairment or disability.[4] Arends v.

---

4. SDCL 62-1-1(7) sets forth the showing necessary to establish a compensable work injury and provides in pertinent part:

> "Injury" or "personal injury," only injury arising out of and in the course of the employment, and does not include a disease in any form except as it results from the injury.

#23528

Dacotah Cement, 2002 SD 57, ¶15, 645 NW2d 583, 588; *Grauel*, 2000 SD 145, ¶19, 619 NW2d at 265. The evidence necessary to support an award must not be speculative, but rather must be "precise and well supported." Byrum v. Dakota Wellness Foundation, 2002 SD 141, ¶16, 654 NW2d 215, 219; Brady Memorial Home v. Hantke, 1999 SD 77, ¶16, 597 NW2d 677, 681.

[¶15.] Department correctly determined, and Horn does not contest Department's ruling, that the July 7, 2000, injury temporarily caused a short term need for treatment, but was not a major contributing cause of Horn's current disability. Dr. Benson's IME Report stated that both the 1997 and 2000 injuries were unrelated to his current complaints which Dr. Benson reaffirmed in his deposition testimony. Dr. Benson's opinions were consistent with the opinions of Dr. Farnham in his report that the July 7, 2000, injury caused a temporary

An injury is compensable only if it is established by medical evidence, subject to the following conditions:

(a) No injury is compensable unless the employment or employment related activities are a major contributing cause of the condition complained of; or

(b) If the injury combines with a preexisting disease or condition to cause or prolong disability, impairment, or need for treatment, the condition complained of is compensable if the employment or employment related injury is and remains a major contributing cause of the disability, impairment, or need for treatment;

(c) If the injury combines with a preexisting work related compensable injury, disability, or impairment, the subsequent injury is compensable if the subsequent employment or subsequent employment related activities contributed

-6-

exacerbation of Horn's low back pain, but did not independently contribute to his current impairment or disability relative to his low back.

[¶16.]	Horn argues that the July 7, 2000, injury was only one of a number of cumulative injuries he sustained at Dakota Pork and Riverside from his years of repetitive bending and lifting; ultimately leading to the degeneration of his disc. This Court has approved an award of "compensation to claimants, even though they cannot prove any specific trauma, if they prove a history of injury to the body that occurs in the normal course of employment."  St. Luke's Midland Regional Medical Center v. Kennedy, 2002 SD 137, ¶11, 653 NW2d 880, 884.

[¶17.]	Horn asserts that Dr. Benson's testimony established the compensability of this claim.  Dr. Benson diagnosed Horn with ankylosing spondylitis and degeneration of the spinal disc.  Dr. Benson attributed the former to a pre-existing genetic condition unrelated to Horn's work and the latter to long term spinal changes from repetitive lifting and bending over his lifetime.  Horn points to the following specific portion of Dr. Benson's testimony in support of the compensability of his degenerative disc condition:

> Q:	The second disorder, the degenerative disc problem, is that problem, how did that come about from a pathologic standpoint, is that something that was contributed to over the years by his bending, lifting and stooping work activities?
>
> A:	That's very likely and probable but how to pin that down to a certain event is very difficult.  You can look at x-rays as you go along and see if it's been preexisting. That's the only other way I know.
>
> . . .

independently to the disability, impairment, or need for treatment.

Q: And just so that I keep that straight, this man worked at one place from 1990 to 1997, seven years, and I can represent to you that he worked, this was at Dakota Pork where he did a significant amount of twisting, bending and stooping, although the lifting that he did wasn't all that heavy but it was continuous. Then after that he worked for a three-year period from about 1997 or 1998, about a two year period, from 1997 to '98 where he was doing a welding job that I don't believe there was a lot of heavy lifting there either but there was a lot of lifting, bending and stooping. Are you going to be able to tell us which one of those two positions, the first seven years at Dakota Pork or the last two years at Riverside Manufacturing, which one of those two working positions or the work activities, would you be able to tell us which one of those places the work activities were a major contributing cause of the progression of the degenerative disc disease, Doctor?

. . .

A: I cannot be specific on that issue.

Q: Would it be your opinion that both of those previous employments then contributed on an equal basis to the progression of the disease, Doctor?

. . .

A: I believe all of these repetitive jobs are contributory, but I would place that over a lifetime rather than just over a ten-year period.

Q: . . . the part that I'm struggling with, Doctor, is this gentleman was able to work and then at some point got into a situation where he was no longer able to continue to work, and I guess the question we have for you is whether the cumulative work activities over the last ten years, were those activities, it doesn't have to be 'the' major contributing factor but simply "a" major contributing factor in his resultant disability and the reason he's not working today?

A: Oh, I believe it is a contributing factor.

-8-

> Q: And I know this gets a little difficult and I know it's not an exact science, but is it fair for me to state that you're not able to quantify from a percentage standpoint if we were trying to apportion it how much of this problem is related to his first seven years at Dakota Pork and the following two, two and a half years at Riverside Manufacturing? Are you able to apportion that for us, Doctor?
>
> A: I don't believe so.

[¶18.] This testimony suggested that Horn's employment history involving repetitive lifting, bending and stooping contributed to his degenerative disc. However, Dr. Benson was unable to state that Horn's degenerative disc or his employment was a major contributing cause of his current disability. When Dr. Benson was specifically asked by Horn's counsel whether the repetitive twisting, bending, stooping and lifting at either Dakota Pork or Riverside was a major contributing cause of his condition, Dr. Benson stated, "I cannot be specific on that issue." When asked again if the work activities at Dakota Pork or Riverside were a major contributing cause of his disability and the reason he is not working today, Dr. Benson could only state, "Oh, I believe it is a contributing factor."

[¶19.] This testimony failed to prove that Horn's degenerative disc injury was a major contributing cause of his existing disability. *See Haynes*, 2004 SD 99, ¶17, 686 NW2d at 661; *Grauel*, 2000 SD 145, ¶17, 619 NW2d at 265. As this Court has previously stated: "[t]he mere occurrence of an injury at work does not mean it is ipso facto work-related" and the employee has the burden to establish that the work injury was a major contributing cause of the disability. *Grauel*, 2000 SD 145, ¶19, 619 NW2d at 265.

[¶20.]		Horn also argues that Department erred in determining that he did not have a compensable injury under subsection (b) or (c) of SDCL 62-1-1(7). "While both subsection (b) and subsection (c) deal with preexisting injuries, the distinction turns on what factors set the preexisting injury into motion; if a preexisting condition is the result of an occupational injury then subsection (c) controls, if the preexisting condition developed outside of the occupational setting then subsection (b) controls" *Byrum*, 2002 SD 141, ¶15, 654 NW2d at 218.

[¶21.]		In support of the showing under subsection (b), Horn cites the following portion of Dr. Benson's testimony:

> Q:	Is it a combination of the degenerative disc and the ankylosing spondylitis that is the combination of the two of them that are keeping this gentleman from being able to work and function today, Doctor?
>
> A:	I believe so.
>
> Q:	And just so the Department keeps this clear, the ankylosing spondylitis is not contributed to by the work activities but the degenerative disc disease and multilevel changes that he had in his lumbar spine, that is contributed to more likely than not by the work activities over the years. Is that a fair statement, Doctor?
>
> A:	Yes.
>
> 					. . .
>
> Q:	Would you agree with me that it would be the combination of both of these conditions together then that would be a major contributing factor for his pain symptoms?
>
> A:	Very likely.

[¶22.]		It is undisputed from Dr. Benson's testimony that the ankylosing spondylitis was unrelated to Horn's employment. Dr. Benson testified that the

*combination* of the non-occupational ankylosing spondylitis and the work related degenerative disc condition was a major contributing factor for Horn's pain symptoms. However, SDCL 62-1-1(7)(b) requires a showing that "the employment or employment related injury is and remains a major contributing cause" of Horn's disability or impairment. Dr Benson's testimony failed to establish that either the degenerative disc or Horn's employment, itself, was a major contributing cause of Horn's current disability or impairment.

[¶23.] Horn cites *Arends*, 2002 SD 57, 645 NW2d 583 in support of his claim that the degeneration of his disc is a compensable work injury. In *Arends*, the claimant was employed for over thirty years in a job involving repetitive stooping and kneeling on concrete. The claimant injured his knee in a non-work accident requiring arthroscopic surgery. The arthroscopic surgery revealed both an acute injury involving torn cartilage and a chronic injury involving degeneration of the cartilage and patella. The surgeon opined that the degeneration was abnormally advanced for a forty-eight year old and was caused by the accumulation of trauma from the claimant's years of work activities. The treating physician testified that the work activity was a major contributing cause of this knee injury. Department awarded the claimant permanent total disability benefits. This Court affirmed stating:

> The *condition,* or loss produced by the injury, is the physical impairment caused by Arends' degenerative osteoarthritis. Findings taken from MRI, arthroscopic surgery, and the examinations of both doctors demonstrate to a reasonable medical probability that Arends' chronic condition was not caused by one acute injury; rather, it was caused by the cumulative trauma from years of bending, stooping and kneeling on concrete.

> Therefore, unlike the claimant in *Grauel,* Arends has met his burden of demonstrating that the repetitive work at Dacotah caused him injuries which, in turn, were a major contributing cause of his disability. Given this evidence, we are not firmly convinced that a mistake has been made and we will not overturn the Department's ruling.

*Arends*, 2002 SD 57, ¶16, 645 NW2d at 588 (citations omitted).

[¶24.] In *Arends* the opinion testimony as to the employment related causation of the claimant's degenerative condition and his resulting disability was well supported. In contrast Dr. Benson did not provide a medical opinion that Horn's degenerative disc was a major contributing cause of his disability. Moreover, Dr. Benson testified that more than 80 percent of the general population has degenerative disc changes over time. Horn was sixty-one at the time of Dr. Benson's last examination and the medical testimony did not establish that the extent of his degeneration was abnormal for his age. Rather, Dr. Farnham opined that the degeneration was consistent with age. Further, Dr. Benson's IME Report stated that Horn's current back pain was due to ankylosing spondilitis and the doctor reaffirmed in his deposition that the ankylosing spondilitis was causing Horn more problems than the spinal degeneration.

[¶25.] The evidentiary basis to support a compensable claim under subsection (c) of SDCL 62-1-1(7) was also lacking. Horn argues that his degenerative disc was work related and pre-existed his employment at Dakota Pork and/or Riverside and was subsequently aggravated by this employment. However, the threshold showing for a claim under subsection (c) of SDCL 62-1-1(7) required Horn to show a "preexisting work related compensable injury, disability, or impairment[.]" While there was evidence suggesting that Horn had spinal degeneration at least prior to

his employment at Riverside, there was no evidence or claim that this degeneration was a "preexisting work related compensable injury" at any time.[5]

[¶26.]        Horn failed to prove the compensability of his disability claim and Horn is not entitled to additional benefits.  Therefore, it is unnecessary to discuss the responsibility for payment of the claim.

[¶27.]        Affirmed.

[¶28.]        GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.

[¶29.]        JENSEN, Circuit Judge, for SABERS, Justice, disqualified.

---

5.        Horn did sustain a compensable back injury at Dakota Pork in 1997. However, the medical evidence showed that Horn's current complaints and condition were unrelated to the 1997 injury.