2003 SD 33

**CAPITAL MOTORS, LLC, Employer and Appellee,**

**and**

**First Dakota Indemnity Co., Insurer and Appellee,**

v.

**William SCHIED, Claimant and Appellant.**

**Nos. 22494, 22502.**

Supreme Court of South Dakota.

Argued on Jan. 15, 2003.

Decided April 2, 2003.

Michael S. McKnight, Lisa Hansen Marso of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, South Dakota, Attorneys for appellees.

Patricia A. Meyers, Heather M. Lammers of Costello, Porter, Hill, Heisterkamp, Bushnell & Carpenter, Rapid City, South Dakota, Attorneys for appellant.

MEIERHENRY, Justice.

[¶ 1.] This appeal arises from a Workers' Compensation claim brought by William Schied (Schied) against Capital Motors and its insurer First Dakota Indemnity Company (First Dakota). The Department of Labor (Department) determined that Schied was permanently totally disabled under the odd-lot doctrine and entitled to permanent total disability benefits.

[¶ 2.] Capital Motors and First Dakota appealed to circuit court. Upon review, the circuit court affirmed the Department's findings on permanent total disability but reversed its award of benefits. The court determined that since Schied was employed he was not entitled to total disability benefits. The court limited Schied's benefits to supplemental wage loss benefits which only required Capital Motors to pay the difference between his earned weekly wage and the workers' compensation benefit plus a return-to-work bonus. Both parties appeal. We affirm the

court's determination that Schied is permanently totally disabled but reverse and remand to reinstate the total disability benefits awarded by the Department.

## FACTS

[¶ 3.] Twenty-six year old Schied worked as an auto mechanic at Capital Motors in Pierre, South Dakota since 1997. On June 12, 1999, a car hoist exploded at work severely crushing Schied's hand. Medical treatment involved three surgeries to the hand in the months after the accident and physical therapy. Nonetheless, he continued to have problems and did not regain full use of the hand. Schied lost flexibility and grip strength and could not grasp objects for any length of time. His treating physicians determined that his condition would steadily worsen likely leading to amputation of the middle finger of his injured hand. His treating physician restricted him from heavy lifting, the use of air impact tools, repetitive fine movements and from proximity to heat or dangerous objects because of the loss of feeling in his hand. As a result, Schied was no longer able to work as a mechanic.

[¶ 4.] Schied's education and training consisted of a high school diploma from Harrold, South Dakota and vocational training as an auto mechanic at Southeast Vocational Technical Institute in Sioux Falls, South Dakota. He began working as a line mechanic at Capital Motors in Pierre, South Dakota in 1997. As a line mechanic he fixed and repaired vehicles at a starting wage of $11 an hour plus incentive bonuses. At the time of his injury he was making $14.25 an hour.

[¶ 5.] After his release for light duty work in September of 1999, Schied re-peatedly contacted Capital Motors about returning to work. Capital Motors informed Schied that a lot manager job and a service writer position[1] were available, however, both jobs paid between $7.50 and $7.75 an hour. Schied declined the jobs because the compensation was not enough to cover his living expenses and commuting costs to Pierre; it also was less than the $14.25 an hour he made prior to the injury and less than his weekly benefit amount of $408 a week.

[¶ 6.] Schied secured a job in February, 2000, as a farm laborer. Schied operated a chemical sprayer, fueled and oiled airplanes, operated farm equipment and assisted in the commercial hunting operation. The employer accommodated his injury by allowing him to pace his work according to what he was able to do. The job paid him $18,000 annually plus a $1,200 year-end bonus which was less than his workers' compensation benefit.

[¶ 7.] Schied petitioned for permanent total disability workers' compensation benefits and a hearing was held on January 3, 2001. Schied's vocational expert testified that based upon Schied's educational background, physical limitations and vocational testing, he was not a candidate for rehabilitation. He also opined that Schied had conducted a "reasonable but unsuccessful job search" and with his physical abilities and transferable skills, Schied's farm employment was at the top end of available employment in his community.

[¶ 8.] The expert for the employer and insurance company testified that he had identified two positions in the Harrold labor market[2] that paid equal to or in excess of Schied's workers' compensation bene-

---

1. A service writer position involves writing drop tickets, customer service, scheduling work, some diagnostic work and verifying mechanic hours per job.

2. Pierre is within sixty miles of Schied's residence and therefore within the Harrold labor market as defined in SDCL 62–4–52.

fits. The first position was for a night supervisor at a local construction company. This job, however, required strong management skills which the expert admitted Schied did not possess. The second position was for a service writer position with Capital Motors, which paid less than Schied's workers' compensation benefit rate.

[¶ 9.] The Department issued a Decision, Findings of Fact and Conclusions of Law in Schied's favor. Capital Motors and First Dakota filed a Petition for Review to the Secretary of Labor which was granted. At a second hearing on June 26, 2002 Capital Motors presented additional evidence concerning a service writer position opening at Capital Motors in June of 2001 for which Schied had not applied. After considering this additional evidence, the Department determined once again that Schied was permanently totally disabled under the odd-lot doctrine and entitled to benefits. Capital Motors and its insurer appealed. The trial court affirmed the Department's finding that Schied was permanently totally disabled but reversed the award of benefits. The circuit court held that Schied was only entitled to supplemental wage loss benefits under SDCL 62–7–41. Both Schied and Capital Motors and its insurer appeal. We address the following issues:

1.) **Whether the claimant is permanently totally disabled under the odd-lot doctrine.**

2.) **Whether a workers' compensation claimant found to be permanently totally disabled is restricted to supplemental wage loss benefits.**

### STANDARD OF REVIEW

[¶ 10.] Our standard of review in workers' compensation cases is controlled by SDCL 1–26–37. "Under SDCL 1–26–37, when the issue is a question of fact then the clearly erroneous standard is applied to the agency's findings; however, when the issue is a question of law, the actions of the agency are fully reviewable." *St. Luke's Midland Regional Medical Center v. Kennedy*, 2002 SD 137, ¶ 8, 653 N.W.2d 880, 883 (citations omitted). We will reverse only when, after careful review, we are firmly convinced a mistake has been made. *Id.* "[T]his Court gives great weight to the findings and inferences made by DOL [Department of Labor] on factual questions." *Id.; Wagaman v. Sioux Falls Const.*, 1998 SD 27, ¶ 12, 576 N.W.2d 237, 240 (citing *Sopko v. C & R Transfer Co., Inc.*, 1998 SD 8, ¶ 6, 575 N.W.2d 225). "The standard of review in an appeal to the Supreme Court from a trial court's appellate review of an administrative decision is de novo: unaided by any presumption that the trial court is correct." *Brown v. Douglas School Dist.*, 2002 SD 92, ¶ 17, 650 N.W.2d 264, 269 (citing *Kurtz v. SCI*, 1998 SD 37, ¶ 10, 576 N.W.2d 878, 882; *Zoss v. United Bldg. Centers, Inc.*, 1997 SD 93, ¶ 6, 566 N.W.2d 840, 843).

### DECISION

1.) **Whether the claimant is permanently and totally disabled under the odd-lot doctrine.**

[¶ 11.] Capital Motors claims that the trial court erred in affirming the Department's finding that Schied was permanently totally disabled under the odd-lot doctrine as defined in SDCL 62–4–53. Under SDCL 62–4–53, Schied "has the burden of proof to make a prima facie showing of permanent total disability." Once Schied meets this burden, the burden then shifts to the employer "to show that some form of suitable work is regularly and continuously available to the claimant in the community." *Id.* An employer may meet this burden by showing that employ-

ment is available which is not sporadic and pays equal to or more than the claimant's benefit amount. The law in effect at the time of Schied's injury in 1999 stated:

An employee is permanently totally disabled if the employee's physical condition, in combination with the employee's age, training, and experience and the type of work available in the employee's community, cause the employee to be unable to secure anything more than sporadic employment resulting in an insubstantial income. An employee has the burden of proof to make a prima facie showing of permanent total disability. The burden then shifts to the employer to show that some form of suitable work is regularly and continuously available to the claimant in the community. An employee shall introduce evidence of a reasonable, good faith work search effort unless the medical or vocational findings show such efforts would be futile. The effort to seek employment is not reasonable if the employee places undue limitations on the kind of work the employee will accept or purposefully leaves the labor market. An employee shall introduce expert opinion evidence that the employee is unable to benefit from vocational rehabilitation or that the same is not feasible.

If an employee chooses to move to an area to obtain suitable employment that is not available within the employee's community, the employer shall pay moving expenses of household goods not to exceed four weeks of compensation at the rate provided by § 62–4–3.[3]

SDCL 62–4–53. Sporadic employment resulting in an insubstantial income is defined as follows:

(2) "Sporadic employment resulting in an insubstantial income," employment that does not offer an employee the opportunity to work either full-time or part-time and pay wages equivalent to, or greater than, the workers' compensation benefit rate applicable to the employee at the time of the employee's injury. Commission or piece-work pay may or may not be considered sporadic employment depending upon the facts of the individual situation.

SDCL 62–4–52(2). "Whether a claimant makes a prima facie case to establish odd-lot total disability inclusion is a question of fact." *Spitzack v. Berg Corp.*, 532 N.W.2d 72, 75 (S.D.1995) (citations omitted). Schied undisputedly met his burden of establishing a prima facie showing of permanent total disability. Capital Motors, however, contends it sustained its burden of showing "that some form of suitable work was regularly and continuously available" to Schied in the Harrold community. Specifically, Capital Motors argues that evidence of a service writer position open and available in the community meets the requirements of "suitable work" "regularly and continuously available" as contemplated by the statute.

[¶ 12.] The Department found that Capital Motor's vocational expert identified two positions in the Harrold labor market; however, one of the positions Schied was not qualified for and the other position, the service writer position at Capital Motors, paid wages below Schied's workers' compensation benefit rate. The Department found that although Capital Motors had raised the wage scale for the

3. SDCL 62–4–52(2) and –53 were amended, effective July, 1999. The amendments became effective after the date of Schied's injury and thus are not applicable. Generally, "[i]n workers' compensation cases the law in effect on the date of the injury governs the rights of the parties." *Sandner v. Minnehaha County*, 2002 SD 123, ¶ 8, 652 N.W.2d 778, 782 (citing *Loewen v. Hyman Freightways, Inc.*, 1997 SD 2, ¶ 9, 557 N.W.2d 764, 766).

service writer positions, no service writer position was open at the time of either hearing. The Department additionally found that service writer positions at Capital Motors and at other businesses in Pierre were not regularly open and available and experienced very little turnover. Although the law does not require an employer actually to place a claimant in an open job, an employer must show more than mere possibility of employment. *Spitzack*, 532 N.W.2d at 76. Based upon the evidence, the Department's finding that the employer had not shown that some form of suitable work was regularly and continuously available in the community was not clearly erroneous.

**2. Whether a workers' compensation claimant found to be permanently totally disabled is restricted to supplemental wage loss benefits.**

█ [¶ 13.] Schied contends that the trial court erred when it limited his workers' compensation benefits to supplemental wages loss benefits. The legislature in SDCL 62–7–41 defined the circumstances under which an employer can limit a claimant to supplemental wage loss benefits. For an employee "not totally disabled," the statute allows an employer "in lieu of rehabilitation" to supplement the earned income of the partially disabled employee with additional wages to equal the workers' compensation benefit plus a twenty percent "return to work incentive." SDCL 62–7–41 states:

> If an employee *is not totally disabled* but is unable to return to the employee's usual and customary employment, the employer may, in lieu of rehabilitation, require the employee to accept, in addition to an earned income, a supplemental wage benefit to be paid by the employer which, in total with the earned income, equals the workers' compensation benefit rate applicable to the em-

ployee at the time of the employee's injury, plus a return to work incentive of twenty percent of the rate otherwise payable to the employee under § 62–4–3, provided the employee is actually offered employment or is employed.

(Emphasis added). The trial court affirmed the Department's finding that Schied was permanently totally disabled yet, in determining the benefit amount, applied a statute which pertains only to claimants who are *not* permanently totally disabled.

[¶ 14.] Capital Motors argues that Schied is "not totally disabled" for purposes of the supplemental wage loss benefit statute. For this statute, the employer asks the Court to adopt a different definition of "total disability" from the definition which applies to the rest of the workers' compensation statutes. Capital Motors contends that since Schied is working (albeit at a job with insubstantial income) he is receiving a windfall and should not receive the full benefit to which he is entitled for permanent total disability.

█ [¶ 15.] This Court has consistently stated that the Workers' Compensation Law is strictly statutory and the provisions of the law govern its application.

> When we are called upon to interpret the meaning of our worker's compensation statutes, we must keep in mind the following principles. One, "[p]roceedings under the Workmen's Compensation Law ... are purely statutory, and the rights of the parties and the manner of procedure under the law must be determined by its provisions." *Chittenden v. Jarvis*, 68 S.D. 5, 8, 297 N.W. 787, 788 (1941). Two, if the language of a statute is clear, we must assume that the legislature meant what the statute says and we must, therefore, give its words and phrases a plain meaning and effect.

*Dubbelde v. John Morrell & Co.*, 473 N.W.2d 500 (S.D.1991). And three, if the statute has an ambiguity, it should then be liberally construed in favor of injured employees. *Mills v. Spink Elec. Co-op.*, 442 N.W.2d 243 (S.D.1989). *Caldwell v. John Morrell & Co.*, 489 N.W.2d 353, 364 (S.D.1992). Additionally, the legislature has said in SDCL 2–14–4 that when a word or phrase is defined by statute, it has that same meaning in other statutes unless it clearly appears otherwise.

> Whenever the meaning of a word or phrase is defined in any statute such definition is applicable to the same word or phrase wherever it occurs except where a *contrary intention plainly appears*.

SDCL 2–14–4 (emphasis added). Furthermore, "[i]t is presumed that the legislature intended provisions of an act to be consistent and harmonious." *Steinberg v. South Dakota Dep't of Military and Veterans Affairs*, 2000 SD 36, ¶ 12, 607 N.W.2d 596, 600 (quoting *Matter of Northwestern Public Service Co.*, 1997 SD 35, ¶ 14, 560 N.W.2d 925, 927) (citation omitted).

[¶ 16.] The legislature defined what constitutes total disability under the odd-lot doctrine in SDCL 62–4–53. There is no indication that it intended to apply a different definition in SDCL 62–7–41. The legislature's allowance of supplemental wage loss benefits only to claimants who are "not totally disabled" is also in harmony with the statutes which describe rehabilitation benefits.[4] Claimants who are candidates for rehabilitation may be required by their employer "in lieu of rehabilitation" to accept the supplemental benefits in addition to earned income plus a twenty percent return to work incentive. It was specifically found that Schied was not a candidate for rehabilitation nor had he applied for rehabilitation benefits.

[¶ 17.] The trial court erred in applying SDCL 62–7–41 to this case. We affirm the determination of Schied's permanent total disability under the odd-lot doctrine and reverse the trial court's decision to limit Schied to supplemental wage loss benefits and reinstate the Department's ruling.

[¶ 18.] GILBERTSON, Chief Justice and SABERS and KONENKAMP, Justices and ERICKSON, Circuit Judge, concur.

[¶ 19.] ERICKSON, Circuit Judge sitting for ZINTER, Justice, disqualified.

4.  SDCL 62–4–5.1 sets forth the procedure and requirements for a claimant who pursues rehabilitation:

> If an employee suffers disablement as defined by subdivision 62–8–1(3) or an injury and is unable to return to the employee's usual and customary line of employment, the employee shall receive compensation at the rate provided by § 62–4–3 up to sixty days from the finding of an ascertainable loss if the employee is actively preparing to engage in a program of rehabilitation as shown by a certificate of enrollment. Moreover, once such employee is engaged in a program of rehabilitation which is reasonably necessary to restore the employee to suitable, substantial and gainful employment, the employee shall receive compensation at the rate provided by § 62–4–3 during the entire period that the employee is engaged in such program. Evidence of suitable, substantial, and gainful employment, as defined by § 62–4–55, shall only be considered to determine the necessity for a claimant to engage in a program of rehabilitation.
>
> The employee shall file a claim with the employee's employer requesting such compensation and the employer shall follow the procedure specified in chapter 62–6 for the reporting of injuries when handling such claim. If the claim is denied, the employee may petition for a hearing before the department.