#23731-rev&rem-GORS, Circuit Judge
**2006 SD 99**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DWAIN ORTH,                                    Claimant and Appellant,

    v.

STOEBNER & PERMANN CONSTRUCTION, INC.         Employer and Appellee,

    and

AMERICAN FAMILY MUTUAL INSURANCE CO.,         Insurer and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE FIRST JUDICIAL CIRCUIT
BON HOMME COUNTY, SOUTH DAKOTA
* * * *

HONORABLE GLEN W. ENG
Judge

* * * *

RONALD A. PARSONS, Jr. and
A. RUSSELL JANKLOW of
Johnson, Heidepriem, Miner, Marlow & Janklow
Sioux Falls, South Dakota

GLENN L. ROTH
Olivet, South Dakota                          Attorneys for appellant.

JEFFREY L. BRATKIEWICZ and
J. G. SHULTZ of
Woods, Fuller, Shultz & Smith
Sioux Falls, South Dakota                     Attorneys for appellees.

* * * *

ARGUED
FEBRUARY 15, 2006

OPINION FILED 11/15/06

#23731

GORS, Circuit Judge

[¶1.] Dwain Orth appeals from a circuit court decision affirming the South Dakota Department of Labor's determination that he was not entitled to workers' compensation benefits. Reversed and remanded.

## FACTS AND PROCEDURAL HISTORY

[¶2.] Dwain Orth (Dwain) was born in Scotland, South Dakota, on February 22, 1942. He graduated from Scotland High School in 1960. He lived and worked in South Dakota his entire life. In 1962 Dwain married Rita. They had two children.

[¶3.] After graduating from high school Dwain held a variety of jobs. From 1972 through 1976 Dwain worked for Cargill Grain Elevator in Scotland, South Dakota. On rare occasions the job required heavy lifting. Dwain did not sustain a work-related injury while at Cargill, but he did at times seek chiropractic treatment for both general maintenance adjustments and also for back pain.

[¶4.] From 1976 through 1988 Dwain drove a concrete truck, performed carpentry work, and was responsible for general maintenance at Scotland Redi-Mix in Scotland, South Dakota. In 1978 Dwain injured his ankle while working for Scotland Redi-Mix. His injury was treated as compensable. Dwain made a full recovery and returned to work. During the twelve years Dwain was employed by Scotland Redi-Mix he would occasionally seek chiropractic treatment for general maintenance adjustments and back pain.

[¶5.] From 1989 through 1994 Dwain performed general carpentry for Slaba Construction in Tripp, South Dakota. While employed by Slaba Construction Dwain continued occasional chiropractic treatment. In 1993 Dwain slipped on a roof while carrying a bundle of shingles and injured his back. He sought treatment

from Dr. Merkwan, a chiropractor in Tyndall, South Dakota. Dwain made a full recovery and did not file any workers' compensation claim while employed by Slaba Construction.

[¶6.] Dwain began working for Stoebner & Permann Construction, Inc. (S & P Construction) in March of 1994. S & P Construction was founded in 1980 by Keith Stoebner (Stoebner) and Steven Permann (Permann). The company was involved in various types of construction and remodeling. Stoebner and Permann were hands-on owners who worked side-by-side with their employees.

[¶7.] As an employee of S & P Construction Dwain was expected to perform a variety of tasks from pouring concrete to hanging sheetrock to shingling roofs. His work-related duties required bending, stooping, and heavy lifting.

[¶8.] When Dwain started working for S & P Construction in 1994 he was in excellent physical condition and was able to perform all work-related tasks. Dwain worked ten-hour days, five days per week. His employers described him as an "exceptional worker" and a "very good employee" who "worked very hard."

[¶9.] Dwain worked for S & P Construction for several years without incident. By the late 1990s, however, Dwain was approaching sixty years of age and his back was starting to give him trouble. He found it increasingly more difficult to perform heavy physical labor as an employee of S & P Construction.

[¶10.] Dwain asked his employers to be assigned light-duty tasks. S & P Construction valued Dwain as an employee and assigned him to light-duty to keep him on the job. S & P Construction was aware of Dwain's increasing back trouble,

and the decision to relegate Dwain to light-duty tasks was based, in part, on this knowledge. Around this time Dwain started taking pain medication for his back.

[¶11.] Later in the Spring of 2000 Dwain asked his employers to reduce his work schedule from five days a week to four. His back condition had continued to worsen, and Dwain believed that an extra day off would help him to recuperate and allow him to continue working for S & P Construction. S & P Construction granted his request. Dwain's employers understood that this request was made due to Dwain's worsening back problems.

[¶12.] Neither the light-duty nor the shortened work-week alleviated Dwain's back pain. On the evening of May 15, 2001, Dwain came home from work in intense pain. Dwain's wife took him to the emergency room. He believed he had a kidney stone. The emergency room personnel questioned Dwain to determine the source of the pain. Dwain indicated that he had not strained his back. Tests revealed degenerative changes in Dwain's spine. The emergency room doctors concluded this was the most likely cause of his back pain. Dwain did not have a kidney stone.

[¶13.] Dwain was unable to work for several weeks after the emergency room visit. On May 30, 2001, Dwain saw Dr. Stolz, a chiropractor in Scotland, South Dakota. Dr. Stolz conducted a physical examination and reviewed Dwain's x-rays. Dr. Stolz confirmed the existence of degenerative changes in Dwain's spine.

[¶14.] Dwain also sought treatment from Dr. Gail Benson of the Orthopedic Institute in Sioux Falls. Dwain saw Dr. Benson on June 6, 2001. Dwain indicated to Dr. Benson that his back pain began about twenty years earlier, but that it had worsened over time. Dr. Benson recommended an MRI exam and a discography.

[¶15.]    On June 8, 2001, Dr. Stolz told Dwain he could return to work on the condition that he limit himself to light-duty work and refrain from all heavy lifting. Dwain did in fact return to work, but even with light-duty tasks his back pain was unbearable.  Ultimately, Dwain's back condition became so debilitating that on July 17, 2001, he was forced to quit his job with S & P Construction.  Dwain told his employers that his back pain had worsened to the point that he "couldn't do the work anymore."  Dwain explained that his back pain was caused by "degenerated discs and wore [sic] out."

[¶16.]    Dwain continued treatment for his back condition.  On August 1, 2001, Dr. Benson noted that Dwain's MRI and discography confirmed "extensive torn degenerated disc [sic] throughout the lumbar spine."  Dr. Benson indicated that Dwain was not a surgical candidate due to the large number of injured discs.  Dr. Benson determined that Dwain should be considered disabled for social security purposes because he could no longer do the physical labor required of a carpenter.

[¶17.]    Dr. Walter Carlson, another of Dwain's doctors at the Orthopedic Institute in Sioux Falls, agreed with Dr. Benson's evaluation, indicating in a clinical note that there was no "surgical treatment that will give [Dwain] predictable improvement in his condition."  Dr. Carlson further noted that Dwain would not "be able to carry out any type of employment that he is trained to do – be it standing or sitting."  Dr. Carlson agreed with Dr. Benson's conclusion that Dwain was totally disabled and should be awarded social security disability benefits.

[¶18.]    Dwain filed for and was awarded social security total and permanent disability benefits.

[¶19.]     On March 5, 2002, Dr. Carlson wrote a letter to Russell Janklow, Dwain's attorney.  At the time of the hearing Dr. Carlson was a board-certified orthopedic surgeon with over thirty years of experience in his field.  He was one of Dwain's treating physicians for over a year.  He practiced medicine in the same office as Dr. Benson, one of Dwain's treating physicians.  In his letter Dr. Carlson indicated that he was unable to determine the major contributing cause of Dwain's back condition, but if he was asked to apportion it, he would conclude that fifty percent of Dwain's condition came as a result of "work related issues" and fifty percent came as a result of Dwain's "pre-existing degenerative changes."

[¶20.]     On or about May 20, 2002, S & P Construction received a South Dakota Employer's First Report of Injury form indicating that Dwain was claiming a work-related injury and was seeking workers' compensation benefits.  The date of injury was indicated to be May 14, 2001.  Stoebner completed the form.  In the box for "Body Part Injured" Stoebner entered code 18, which indicated a back injury.  Stoebner described the injury in the following manner:  "employee said his back can not [sic] take this kind of work."

[¶21.]     On June 14, 2002, S & P Construction and their Insurer, American Family Mutual Insurance Company filed their joint answer denying responsibility for benefits.

[¶22.]     On April 29, 2003, Dr. Richard Farnham conducted an independent medical examination on Dwain.  Dr. Farnham reviewed Dwain's medical records and physically examined him.  Dr. Farnham diagnosed Dwain with "mechanical low back pain due to multi-level intervertebral disk degeneration and non-traumatic,

congenital grade I-II spondylolisthesis of L5 on S1 with low back pain." Dr. Farnham opined that Dwain's career in manual labor had no impact on his pre-existing degenerative back condition. He indicated that none of Dwain's employment duties—while employed at S & P Construction or elsewhere—worked "to either temporarily exacerbate or permanently aggravate" his back condition. Dr. Farnham's report concluded that Dwain's condition was not work-related but instead was "a function of time and the aging process and past history of tobacco use for 30 years."

[¶23.] A hearing on Dwain's application for workers' compensation benefits was held before a Department of Labor (Department) hearing examiner on January 29, 2004, in Sioux Falls. Three issues were presented in the case: 1) whether Dwain's injury was causally connected to his work activities at S & P Construction, 2) whether S & P Construction had actual knowledge or notice of Dwain's work-related injury, and 3) whether Dwain was permanently and totally disabled under South Dakota's odd-lot doctrine.

[¶24.] The hearing examiner ruled in favor of S & P Construction and its Insurer, American Family Mutual Insurance Company, concluding that Dwain failed to prove causation. The hearing examiner did not rule on issues two (notice) or three (odd-lot).

[¶25.] Dwain appealed to the circuit court. The First Circuit Court affirmed the hearing examiner's finding on causation. The circuit court also ruled on the notice issue, which had not been addressed by the hearing examiner. The circuit court filed supplemental findings of fact and conclusions of law and an order ruling

that S & P Construction did not have actual knowledge or notice of the work-relatedness of Dwain's back condition.

[¶26.]    Dwain timely appealed to this Court.  His back condition continues to be debilitating.  Due to the severity of his pain Dwain is unable to perform most manual labor and physical tasks around the house.  He wears a brace on his lower back when driving.  He is unable to take his fishing boat out unless someone is there to help him load and unload the boat.

### STANDARD OF REVIEW

[¶27.]    The standard of review in a workers' compensation case is established by SDCL 1-26-36 (Tischler v. United Parcel Service, 1996 SD 98, ¶23, 552 NW2d 597, 602) and SDCL 1-26-37 (Capital Motors v. Schied, 2003 SD 33, ¶10, 660 NW2d 242, 245).  Under SDCL 1-26-36, the applicable standard of review "will vary depending on whether the issue is one of fact or one of law." *Tischler*, 1996 SD 98, ¶23, 552 NW2d at 602.  "When the issue is a question of fact, then the actions of the agency are judged by the clearly erroneous standard; and when the issue is a question of law, then the actions of the agency are fully reviewable [*i.e.*, de novo]." *Id*.  "Mixed questions of fact and law are fully reviewable."  Brown v. Douglas Sch. Dist., 2002 SD 92, ¶9, 650 NW2d 264, 268.

[¶28.]    When findings of fact are made based on live testimony, the clearly erroneous standard applies.  *See Brown*, 2002 SD 92, ¶9, 650 NW2d at 267-68.  Deference and great weight are given to the hearing examiner on fact questions. *Id*. at 267.  "When factual determinations are made on the basis of documentary

evidence, however, we review the matter de novo, unhampered by the clearly erroneous rule." *Id*. at 268.

[¶29.] "'The standard of review in an appeal to the Supreme Court from a trial court's appellate review of an administrative decision is de novo: unaided by any presumption that the trial court is correct.'" *Capital Motors,* 2003 SD 33, ¶10, 660 NW2d at 245 (quoting *Brown,* 2002 SD 92, ¶17, 650 NW2d at 269). While the hearing examiner's resolution of fact questions is given great weight, the circuit court will receive no such deference.

[¶30.] In the present case only one issue, causation, is technically subject to review. The hearing examiner did not rule on notice and neither the hearing examiner nor the circuit court ruled on the odd-lot issue.

ANALYSIS AND DECISION

ISSUE ONE

[¶31.] **Was Dwain's back disability causally connected to his work at S & P Construction?**

[¶32.] SDCL 62-1-1(7) sets forth the standard an employee must meet to prevail in a workers' compensation case. To be awarded benefits, an employee must first establish that he has suffered an "injury arising out of and in the course of the employment[.]" *Id. See also* Horn v. Dakota Pork, 2006 SD 5, ¶14, 709 NW2d 38, 41 ("Our law requires a claimant to establish that his injury arose out of his employment by showing a causal connection between his employment and the injury sustained."). "'This causation requirement does not mean that the employee must prove that [his] employment was the proximate, direct, or sole cause of [his] injury; rather the employee must show that [his] employment was a '*contributing*

*factor'* to [his] injury.'" *Brown,* 2002 SD 92, ¶19, 650 NW2d at 270 (quoting Arends v. Dacotah Cement, 2002 SD 57, ¶13, 645 NW2d 583, 587-88) (emphasis in original).

[¶33.]     If the injured claimant suffers from "a preexisting disease or condition" unrelated to the injury, and the injury combines with the preexisting condition "to cause or prolong disability, impairment, or need for treatment," the injury is compensable only if the claimant can prove that his "employment or employment related injury is and remains a major contributing cause of the disability, impairment, or need for treatment[.]"  SDCL 62-1-1(7)(b).  In short, in a case involving a preexisting disease or condition, a workers' compensation claimant must satisfy two tests of causation in order to prevail on his claim:  1) causation of the injury (contributing factor test), and 2) causation of the disability (major contributing cause test).  *See Brown,* 2002 SD 92, ¶19, 650 NW2d at 270.

[¶34.]     With respect to proving causation of a disability, this Court has stated that:

> [T]he testimony of professionals is crucial in establishing
> this causal relationship because the field is one in which
> laymen ordinarily are unqualified to express an opinion.
> Unless its nature and effect are plainly apparent, an
> injury is a subjective condition requiring an expert
> opinion to establish a causal relationship between the
> incident and the injury or disability.

Westergren v. Baptist Hospital of Winner, 1996 SD 69, ¶31, 549 NW2d 390, 398 (quoting Day v. John Morrell & Co., 490 NW2d 720, 724 (SD 1992)).  A medical expert's finding of causation cannot be based upon mere possibility or speculation. Deuschle v. Bak Const. Co., 443 NW2d 5, 6 (SD 1989).  *See also* Rawls v. Coleman-Frizzell, Inc., 2002 SD 130, ¶21, 653 NW2d 247, 252-53 (quoting *Day,* 490 NW2d at

724) ("'Medical testimony to the effect that it is possible that a given injury caused a subsequent disability is insufficient, standing alone, to establish the causal relation under [workers'] compensation statutes.'"). Instead, "[c]ausation must be established to a reasonable medical probability[.]" Truck Ins. Exchange v. CNA, 2001 SD 46, ¶19, 624 NW2d 705, 709.

[¶35.]     The claimant has the burden of proving the facts necessary to sustain an award of compensation. King v. Johnson Bros. Construction Company, 83 SD 69, 73, 155 NW2d 183, 185 (1967). The claimant must prove the essential facts by a preponderance of the evidence. Caldwell v. John Morrell & Co., 489 NW2d 353, 358 (SD 1992).

[¶36.]     The issue in this case does not concern whether or not Dwain's injury arose out of and in the course of his employment with S & P Construction (*i.e.*, causation of the injury). Instead, the issue deals solely with the causation of Dwain's disability, and resolution of this issue turns on the medical evidence. Dwain's expert, Dr. Walter Carlson, offered the following opinion:

> We recently reviewed all the records of Mr. Orth. After reviewing this history and all other data's [sic] available to us, it is not possible for me to determine which of the patient's work related activities or the patient's pre-existing degenerative changes are the major contributing cause of his disability impairment and the need for medical treatment. If we are asked in the future to apportion this, we would give it a 50% to the pre-existing degenerative problems and 50% to the work related issues.

S & P Construction's expert, Dr. Richard Farnham, opined that Dwain's condition was not work-related but instead was "a function of time and the aging process and past history of tobacco use for 30 years." The hearing examiner concluded that Dr.

Carlson's letter failed "to establish that [Dwain's] employment or employment related injury is and remains a major contributing cause of the disability, impairment, or need for treatment in combination with his preexisting condition." The hearing examiner accepted Dr. Farnham's opinion. Dwain's claim was consequently denied for failure to prove causation of the disability.

[¶37.] The circuit court affirmed the hearing examiner on this issue. The circuit court found that, although Dr. Carlson was an expert qualified to render an opinion in the matter, his letter dated March 5, 2002, was insufficient to prove causation of Dwain's disability. The circuit court found Dr. Carlson's letter contained "only a vague reference to [Dwain's] records and data that were reviewed and provided no foundation as to the reasonable degree of certainty that Dr. Carlson's opinions were based on."

[¶38.] All of the medical evidence in this case was presented by way of reports, medical records and letters stipulated into evidence. There was no live testimony on the causation issue. Consequently, although "'[i]ssues of causation in worker's compensation cases are factual issues'" ordinarily subject to clearly erroneous review (Therkildsen v. Fisher Beverage, 1996 SD 39, ¶8, 545 NW2d 834, 836 (quoting Lawler v. Windmill Restaurant, 435 NW2d 708, 709 (SD 1989)), in this case the hearing examiner's and circuit court's findings are reviewed de novo. *Brown*, 2002 SD 92, ¶9, 650 NW2d at 267-68.

[¶39.] Dwain's case is similar to *Horn*, 2006 SD 5, 709 NW2d 38. In *Horn*, a workers' compensation claimant suffered two work-related back injuries: one in 1997 while employed by Dakota Pork, and another in 2000 while employed by

Riverside Manufacturing. The issue in *Horn* was whether either injury was a major contributing cause of his back condition. The employers' expert medical testimony was provided by Dr. Richard Farnham (the same doctor who testified on behalf of the employer in this case), who diagnosed the claimant with "mechanical low back pain due to degenerative changes of the lumbosacral spine compatible with age rather than trauma." *Id.* ¶8. To prove causation, the claimant relied on the opinion of Dr. Gail Benson (the same doctor who treated Dwain in this case), who diagnosed Horn with "ankylosing spondylitis and chronic low back pain." *Id.* ¶9. "Dr. Benson attributed the former to a pre-existing genetic condition unrelated to Horn's work and the latter to long term spinal changes from repetitive lifting and bending over his lifetime." *Id.* ¶17. Horn pointed to the following testimony from Dr. Benson to support the compensability of his condition:

> Q: The second disorder, the degenerative disc problem, is that problem, how did that come about from a pathologic standpoint, is that something that was contributed to over the years by his bending, lifting and stooping work activities?
>
> A: That's very likely and probable but how to pin that down to a certain event is very difficult. You can look at x-rays as you go along and see if it's been preexisting. That's the only other way I know.
>
> * * *
>
> Q: And just so that I keep that straight, this man worked at one place from 1990 to 1997, seven years, and I can represent to you that he worked, this was at Dakota Pork where he did a significant amount of twisting, bending and stooping, although the lifting that he did wasn't all that heavy but it was continuous. Then after that he worked for a three-year period from about 1997 or 1998, about a two year period, from 1997 to '98 where he was doing a welding job that I don't believe there was a lot of

heavy lifting there either but there was a lot of lifting, bending and stooping. Are you going to be able to tell us which one of those two positions, the first seven years at Dakota Pork or the last two years at Riverside Manufacturing, which one of those two working positions or the work activities, would you be able to tell us which one of those places the work activities were a major contributing cause of the progression of the degenerative disc disease, Doctor?

* * *

A: I cannot be specific on that issue.

Q: Would it be your opinion that both of those previous employments then contributed on an equal basis to the progression of the disease, Doctor?

* * *

A: I believe all of these repetitive jobs are contributory, but I would place that over a lifetime rather than just over a ten-year period.

Q: . . . the part that I'm struggling with, Doctor, is this gentleman was able to work and then at some point got into a situation where he was no longer able to continue to work, and I guess the question we have for you is whether the cumulative work activities over the last ten years, were those activities, it doesn't have to be 'the' major contributing factor but simply "a" major contributing factor in his resultant disability and the reason he's not working today?

A: Oh, I believe it is a contributing factor.

Q: And I know this gets a little difficult and I know it's not an exact science, but is it fair for me to state that you're not able to quantify from a percentage standpoint if we were trying to apportion it how much of this problem is related to his first seven years at Dakota Pork and the following two, two and a half years at Riverside Manufacturing? Are you able to apportion that for us, Doctor?

A: I don't believe so.

*Id.* at 42-43. This Court found Dr. Benson's opinion insufficient to establish causation because he was "unable to state that Horn's degenerative disc or his employment was a major contributing cause of his current disability." *Id.* ¶18.

[¶40.]    Dwain's condition is similar to the condition of the claimant in *Horn*. Both worked in physically demanding professions for long periods of their lives. Both suffered from degenerative changes in their spines. Both were evaluated by Dr. Farnham, who concluded that both Dwain's and Horn's back problems were not related to their employment but rather were a result of their age. Both were treated by Dr. Benson at the Orthopedic Institute in Sioux Falls.

[¶41.]    Contrast Dr. Benson's opinion in *Horn* with Dr. Carlson's opinion in this case. Dr. Benson's opinion was equivocal; his testimony clearly did not indicate that Horn's employment was a major contributing cause of his disability. Dr. Carlson, however—who practices medicine with Dr. Benson at the Orthopedic Institute in Sioux Falls—stated that he was unable to determine whether Dwain's work-related activities or his pre-existing degenerative changes were *the* major contributing cause of Dwain's impairment. However, he went on to state that if he were asked to apportion it, he would determine the pre-existing condition to be fifty percent responsible and Dwain's work-related activities to be fifty percent responsible for his condition.

[¶42.]    A claimant does not need "to prove that the work injury was 'the' major contributing cause, only that it was 'a' major contributing cause, pursuant to SDCL 62-1-1(7)." *Brown*, 2002 SD 92, ¶23, 650 NW2d at 271 (describing the legislative history of SDCL 62-1-1(7)). Dr. Carlson's opinion clearly indicated that Dwain's

work-related activities were fifty percent responsible for his impairment. No other cause could exceed this; no other cause could be greater than fifty percent responsible for Dwain's condition. A cause which cannot be exceeded is a major contributing cause. Dr. Carlson's opinion therefore established to a reasonable degree of medical probability that Dwain's work-related activities were a major contributing cause of his current back impairment.

[¶43.] Dr. Carlson's letter stated that there were two major contributing causes of Dwain's back impairment—his pre-existing degenerative condition and his work-related activities—and these two major contributing causes were equally responsible for Dwain's condition. Consequently, according to Dr. Carlson, Dwain's work-related activity at S & P Construction was a major contributing cause of his disability. This is the plain meaning of his opinion expressed in the letter dated March 5, 2002. Any other interpretation of his opinion would place hyper-technical restrictions on workers' compensation claimants seeking to recover for injuries sustained in the course of their employment, and would ignore the principle that workers' compensation statutes are to be "'liberally construed in favor of injured employees.'" Vaughn v. John Morrell & Co., 2000 SD 31, ¶33, 606 NW2d 919, 925 (quoting Welch v. Automotive Co., 528 NW2d 406, 409 (SD 1995)).

[¶44.] This Court has indicated that "[t]here are no 'magic words' needed to express an expert's degree of medical certainty, and the test is only whether the expert's words demonstrate that he or she was expressing an expert medical opinion." Stormo v. Strong, 469 NW2d 816, 824 (SD 1991). Dr. Carlson's letter was clear and unequivocal. His opinion was stated in no uncertain terms: fifty percent

of Dwain's impairment could be blamed on his preexisting degenerative condition, and fifty percent could be blamed on his work-related activities. The opinion was expressed to a satisfactory degree of medical probability.

[¶45.] Dr. Carlson was a board-certified orthopedic surgeon with thirty years of experience in the field. He graduated from the University of Minnesota Medical School and the Mayo Graduate School of Medicine. He completed advanced training in adult spine surgery at the Institute for Low Back Care in Minneapolis. He, along with his associate, Dr. Benson, was one of Dwain's treating physicians at the Orthopedic Institute for more than one year. He had personally examined Dwain on several occasions. Before rendering his opinion, he reviewed Dwain's history "and all other data" available to him.

[¶46.] "This Court has approved an award of 'compensation to claimants, even though they cannot prove any specific trauma, if they prove a history of injury to the body that occurs in the normal course of employment.'" *Horn*, 2006 SD 5, ¶16, 709 NW2d at 42. *See also* St. Luke's Midland Regional v. Kennedy, 2002 SD 137, ¶13, 653 NW2d 880, 884-85 ("A pre-existing medical condition or infirmity does not disqualify a claim under the 'arising out of employment' requirement if the employment aggravated, accelerated, or combined with the condition or infirmity to produce the disability for which compensation is sought."). Furthermore, this Court stated in Schuck v. John Morrell & Co., 529 NW2d 894, 899 (SD 1995)(quoting *Caldwell*, 489 NW2d at 358):

> [A]n employee does not have to have an accident or
> experience any trauma to his person before a medical
> condition will qualify as a compensable injury. It is
> sufficient that the disability was brought on by strain or

> overexertion incident to the employment, though the exertion or strain need not be unusual or other than that occurring in the normal course of employment.

[¶47.] Dwain's current impairment, although it cannot be traced to a single instance of trauma, is nonetheless compensable under South Dakota law. When Dwain started working for S & P Construction, he was an "exceptional worker" who could perform any work-related task. After five years of laboring as an employee of S & P Construction, his back had become so painful that he was forced to quit working. His employment-related activities at S & P Construction clearly "aggravated, accelerated, or combined with" his preexisting condition to produce his ultimate disability.

[¶48.] Under South Dakota law, insofar as a workers' compensation claimant's "pre-existing condition is concerned[,] we must take the employee as we find him." *Kennedy*, 2002 SD 137, ¶13, 653 NW2d at 884. "If a compensable event contributed to the final disability, recovery may not be denied because of the pre-existing condition, even though such condition was the immediate cause of the disability." *Id*. (quoting Elmstrand v. G & G Rug & Furniture Company, 77 SD 152, 155, 87 NW2d 606, 608 (1958)). Dwain's age and degenerative spinal condition may have made him more susceptible to a work-related injury while working for S & P Construction, but this does not alter the compensability of his claim.

[¶49.] Dwain met his burden of proving by a preponderance of the evidence that his work-related activities at S & P Construction were a major contributing cause of his disability.

ISSUE TWO

[¶50.]      **Did S & P Construction have actual knowledge of Dwain's work-related injury?**

[¶51.]      Pursuant to SDCL 62-7-10, an employee who seeks workers' compensation benefits for an injury must provide the employer with written notice of the injury within three days of its occurrence.  Mudlin v. Hills Materials Co., 2005 SD 64, ¶21, 698 NW2d 67, 74.  "However, when an employer [has] 'actual knowledge' of the injury, the failure to provide notice does not bar the claim."  *Id*.  Under South Dakota law, a workers' compensation claimant bears the burden of establishing that the claimant either provided written notice of the injury or that the employer had actual knowledge of the injury.  *Id*.  Notification of an injury, either written or by way of actual knowledge, is "a condition precedent to compensation."  *Westergren*, 1996 SD 69, ¶17, 549 NW2d at 395.

[¶52.]      "The purpose of the written notice requirement is to give the employer the opportunity to investigate the injury while the facts are accessible."  *Id*. ¶18.  "The notice requirement protects the employer by assuring he is alerted to the possibility of a claim so that a prompt investigation can be performed."  *Id*.

[¶53.]      "In determining actual knowledge, the employee must prove that the employer had 'sufficient knowledge to indicate the possibility of a compensable injury.'"  Shykes v. Rapid City Hilton Inn, 2000 SD 123, ¶36, 616 NW2d 493, 501 (quoting Streyle v. Steiner Corp., 345 NW2d 865, 866 (SD 1984)).  "The employee must also prove that the employer had sufficient knowledge that the injury was sustained *as a result of [his] employment* versus a pre-existing injury from a prior employment."  *Id*.  (emphasis original).  In other words, to satisfy the actual

knowledge notice requirement, the employer: 1) must have sufficient knowledge of the possibility of a compensable injury, and 2) must have sufficient knowledge that the possible injury was related to employment with the employer.

[¶54.] Dwain did not give written notice. As a result, Dwain's workers' compensation claim could proceed only if he proved that his employers had actual knowledge of both his injury and its potential work-relatedness. Dwain's employers were fully aware of his back condition. The only question was whether Dwain's employers had actual knowledge that Dwain's back condition may have been related to his employment at S & P Construction.

[¶55.] The hearing examiner did not address notice. Notice is the threshold issue in a workers' compensation matter. The hearing examiner denied Dwain's claim solely on the causation issue. The circuit court, however, concluded that Dwain's employers did not have actual knowledge of the work-relatedness of Dwain's injury sufficient to satisfy SDCL 62-7-10(1).

[¶56.] The circuit court's ruling on this issue was based entirely on documentary evidence. Therefore, we review the ruling de novo. Moreover, this Court has held that the question of whether or not an injured employee has satisfied SDCL 62-7-10 is a mixed question of law and fact. *Schuck*, 529 NW2d at 897. Mixed questions of law and fact are also reviewed de novo. *Id*.

[¶57.] The circuit court's decision on notice was erroneous for two reasons. First, the question of what knowledge Dwain's employers possessed about his injury should have been addressed by the hearing examiner. In the absence of a finding by the hearing examiner, there was nothing for the circuit court to review. The

hearing examiner had the benefit of observing both Stoebner and Permann testify live at the hearing. The hearing examiner was able to evaluate the credibility of the witnesses in a way the circuit court could not.

[¶58.]     Second, the circuit court's ruling on notice was not consistent with the facts of the case and the testimony of Stoebner and Permann themselves. When Dwain began work for S & P Construction, he was an "exceptional worker" who could perform any work-related task. After several years of the bending, stooping and heavy lifting required as an employee of S & P Construction, Dwain was forced to ask for lighter duty work.[1] Ultimately, he could no longer do the work at all.

[¶59.]     This Court has stated that, to satisfy the actual knowledge notice requirement, "'[t]here must . . . be some knowledge of accompanying facts

---

1.     The following testimony from Permann was elicited during the proceeding before the hearing examiner:

> Q: I guess the point I'm trying to make is in 1994 when he went to work for you folks, from your personal observation of him, he was having no problems doing any of the work that you folks had him doing.
>
> A: No.
>
> Q: And then, three, four years into the job of doing this medium to heavy labor, manual labor, he started having more and more complaints about back problems; isn't that a fair statement?
>
> A: Yes.
>
> Q: And he would make those complaints to you personally, and you would actually accommodate him in the type of work he was performing; isn't that fair?
>
> A: Toward the end, yes.

connecting the injury or illness with the employment, and indicating to a reasonably conscientious manager that the case *might* involve a *potential* compensation claim.'" *Vaughn*, 2000 SD 31, ¶33, 606 NW2d at 925 (emphasis added) (quoting Larson's Workers' Compensation Laws §78.31(a)(2)).  Dwain's dramatic change in condition should have indicated to a "reasonably conscientious manager" that the case "might involve a potential compensation claim."

[¶60.]		The testimony from Stoebner and Permann did not support the circuit court's decision on notice.  Stoebner testified before the hearing examiner:

> Q:  But he was complaining more and more about his back
> condition getting worse towards the end; isn't that true?
>
> A:  He was just saying that he wanted to do – you know,
> slow down.  And I don't know, he never really did
> complain.  He just said he was doctoring more for it.
>
> Q:  But you knew that one of the reasons that he wanted
> to slow down is even though he wasn't complaining, it was
> because it was hard work; you knew that?
>
> A:  Yeah.  I suppose it was getting to the point that it was
> getting harder for him if his back was bothering him.
>
> Q:  And in fact, you knew at that time that it wasn't a
> leap of logic that the type of hard work that he was
> performing day in and day out was playing a role in the
> progression of his back problems; you knew that, isn't
> that true?
>
> A:  Well, since he told us, yeah.  I mean that it would be a
> logical part of it since he was doctoring for it so that
> would be a logical part that he had back trouble, yeah.
>
> Q:  Well it was also –
>
> A:  That's how I gathered my information from.
>
> Q:  And it was also logical because you were seeing him
> day in and day out.  You were actually working alongside

of him and watching the kind of work he was performing every day?

A: Uh-huh.

Q: Right?

A: Yeah, right.

Q: And it was hard work, wasn't it?

A: Well, from medium to hard work, yes.

Q: I'm going to talk to you about this notice issue, and I guess I can just simply ask you. At the time that he left your employment, which I understand it to be May of 2001, you knew the reason he was leaving the employment was because of his back problems; you knew that, Mr. Stoebner, isn't that true?

A: Because he was doctoring for them, yes.

Q: And you knew the doctor had told him that he should not continue to do this type of work; you knew that as well?

A: I never had any information telling me from the doctor that he could not do this work. It was just from him telling me.

Permann testified at the same hearing:

Q: And as the years went by, he started complaining more and more about aches and pains in his back; isn't that true?

A: Yes. As we all did.

Q: Yeah. And at your deposition, I think we talked about that. You know, it's pretty obvious to you that the work was taking a toll on Dwain. That wasn't something that was a surprise to you at all, was it, Mr. Permann?

A: No.

Q: And in fact, you've personally been in this industry for years, and the heavy labor has taken a toll on you as well?

A: Yes.

Q: In the last couple of years that Dwain worked for you folks, you would hear Dwain say: I've got to think about doing something different or slowing down because my back is giving me problems. Do you remember him making statements like that?

A: Yes.

Q: And when he would make those statements to you, you took that that it was work-related, that it was the work that was causing him problems, correct?

A: Yes.

Q: And you understood that because you were watching him doing this heavy lifting, bending, and stooping day in and day out, correct?

A: Yes.

* * *

Q: When Dwain left the employment of you and Mr. Stoebner, you knew at that time and you personally understood the reason he was leaving your employment was because of back problems related to work; isn't that true?

A: Yes.

[¶61.] When Dwain terminated his employment with S & P Construction, he did so because his back condition had become so painful that he "couldn't do the work anymore." Dwain told his employers that his back pain was caused by "degenerated discs and wore [sic] out." A "reasonably conscientious manager" would ask: worn out from *what*? If an employer is put on notice that an injury *may* be

work related, the employer has actual knowledge sufficient to satisfy SDCL 62-7-10(1). *See id.* *See also Westergren*, 1996 SD 69, ¶20-21, 549 NW2d at 396.

[¶62.] In the absence of a finding from the hearing examiner, this Court would ordinarily be reluctant to rule on notice. However, in this case, the testimony of Stoebner and Permann themselves is inconsistent with the circuit court's ruling and resolves the notice question. Stoebner and Permann may not, in this appeal, "'assert a better version of the facts than [their] prior testimony and 'cannot now claim a material issue of fact which assumes a conclusion contrary to [their] own testimony.'" Clausen v. Northern Plains Recycling, 2003 SD 63, ¶18, 663 NW2d 685, 690 (quoting Loewen v. Hyman Freightways, Inc., 1997 SD 2, ¶16, 557 NW2d 764, 768) (other citations omitted). Stoebner and Permann admitted that they both had actual knowledge of Dwain's injury and its potential relatedness to his work at S & P Construction.

[¶63.] Consequently, Dwain satisfied the notice threshold. Dwain proved that his employers had actual knowledge of a potential injury and that the injury may have been related to his work at S & P Construction. The circuit court's determination to the contrary is reversed.

CONCLUSION

[¶64.] When Dwain started working for S & P Construction in 1994 he was in excellent health and could perform any work-related task. His employers described him as an "exceptional worker" and a "very good employee" who "worked very hard." By the late 1990s, however, the bending, stooping and heavy lifting required of him as an employee of S & P Construction had injured his back to the extent that he was

forced to request lighter duty work and a shortened work-week. Eventually, his back condition became so painful that he had no choice but to resign from S & P Construction.

[¶65.] Dr. Carlson, one of Dwain's treating physicians, stated that there were two major contributing causes for his back impairment. According to Dr. Carlson, Dwain's pre-existing degenerative spinal condition and his work-related activities were each fifty percent to blame for his ultimate disability. When a cause is determined to be fifty percent responsible for a disability, no other cause can exceed it. A cause that cannot be exceeded is a major contributing cause of a disability. Therefore, Dwain's work-related activities were a major contributing cause of his disability.

[¶66.] Dr. Carlson's opinion was stated to a sufficient degree of medical probability. The hearing examiner and the circuit court are reversed on causation. Dwain satisfied his burden of proving that injuries sustained in the course of his employment with S & P Construction were a major contributing cause of his ultimate disability.

[¶67.] Dwain also satisfied his burden of proving that his employers had actual knowledge of his injury and its potential work-relatedness.

[¶68.] The matter is reversed and remanded to Department for a determination on permanent and total disability under the odd-lot doctrine.

[¶69.] GILBERTSON, Chief Justice, and MEIERHENRY, Justice, concur.

[¶70.] ZINTER, Justice, concurs in part and dissents in part.

[¶71.] BASTIAN, Circuit Judge, dissents.

[¶72.] 　　　　GORS, Circuit Judge, sitting for SABERS, Justice, disqualified.

[¶73.] 　　　　BASTIAN, Circuit Judge, sitting for KONENKAMP, Justice, disqualified.

ZINTER, Justice (concurring in part and dissenting in part).

[¶74.] 　　　　I join the opinion of the Court on the issue of causation. However, I respectfully dissent on the issue of notice. In my view, the notice issue should be remanded because there is conflicting evidence concerning Employer's actual knowledge of the work-related nature of the disability. Moreover, although the administrative agency tried this factual dispute concerning notice, it has not resolved the conflicting evidence. Therefore, even though this Court identifies evidence that employer may have admitted actual notice, the dispute was not resolved below and we should not resolve this conflict involving live testimony. We should remand for the entry of findings of fact and conclusions of law on the issue of actual notice.

[¶75.] 　　　　It bears repeating that in this type of appeal, we are reviewing the findings of fact and conclusions of law of the administrative agency rather than the findings and conclusions of the circuit court. Therefore, "'[t]he Supreme Court [reviews] the administrative agency's decision. . . unaided by any presumption that the circuit court's decision was correct.'" Kurtz v. SCI, 1998 SD 37, ¶10, 576 NW2d 878, 882 (quoting Zoss v. United Bldg. Ctrs., Inc., 1997 SD 93, ¶6, 566 NW2d 840, 843).

[¶76.] 　　　　In this case the issue of notice was fully litigated at the administrative hearing, but the hearing examiner expressly declined to decide the issue because

she disposed of the case on the issue of causation. This Court, however, decides the notice issue on appellate review by focusing solely on alleged concessions of the employer. However, live testimony was taken on the notice issue and the only findings adopted by the hearing examiner suggest that Employers did not have actual notice. For example, in Findings 48-53 the hearing examiner found:

> (1) that Employer received a report of first injury on May 20, 2002;
> (2) that May 20, 2002, was the first time Employer became aware that Claimant was claiming to have sustained a work-related injury;
> (3) that Mr. Stoebner was surprised when he received Claimant's first report of injury;
> (4) that Employer had posted a notice in the workplace notifying employees that they were to promptly report any injuries they received while working; and
> (5) that neither Claimant nor any doctor ever informed either Permann or Stoebner that Claimant had been injured while working.

Ultimately, the hearing examiner did not adopt findings or conclusions resolving the conflict between these findings and the testimony of the two employers relied upon by this Court. That conflict remains unresolved by any fact finder.

[¶77.] Because the notice issue should be decided after a resolution of this conflicting live testimony, I would remand the matter for dispositive findings and conclusions. I would also remand because the findings that were adopted by the hearing examiner suggest no actual notice, this Court decides the issue on other testimony not even acknowledged by the hearing examiner, and the hearing examiner has yet to actually decide the issue. Under these circumstances a remand is required because, as we have often noted, "the fact finder. . . had the advantage of hearing testimony of witnesses and could directly judge their credibility. As a

reviewing court, neither the circuit court nor this [C]ourt should attempt to assume such a role." Hendricksen v. Harris, 1999 SD 130, ¶7, 600 NW2d 180, 181.

BASTIAN, Circuit Judge (dissenting)

[¶78.] I respectfully dissent. The appellant's causation evidence is based solely on a one-paragraph letter of Dr. Carlson set forth at ¶36. Dr. Carlson admits "it is not possible for me to determine which of the patient's work-related activities or the patient's pre-existing degenerative changes are the major contributing cause of his disability impairment and the need for medical treatment." He nonetheless concludes, "If we are asked in the future to apportion this, we would give it a 50% to the pre-existing degenerative problems and 50% to the work related issues."

[¶79.] I find that Dr. Carlson's allusion to a future determination is too indefinite and his reference to "the work related issues" is too nebulous to have established causation to a reasonable medical probability. Enger v. FMC, 1997 SD 70, ¶18, 565 NW2d 79, 85 (when the medical evidence is not conclusive, the claimant has not met the burden of showing causation by a preponderance of the evidence. Causation must be established to a reasonable medical probability, not just a possibility.)[2]

[¶80.] More importantly, there is no affidavit, deposition or live testimony by the doctor. The one-paragraph letter was signature-stamped.

[¶81.] This Court has "consistently required expert medical *testimony* in establishing causation for workers' compensation purposes." *Enger, supra,*

---

2.     Furthermore, Dr. Carlson's letter is addressed to the appellant's attorney but the attorney's letter of inquiry is not part of the record. Thus, we have Dr. Carlson's answer but are left to speculate as to the question posed.

(emphasis supplied). In Hanten v. Palace Builders, Inc., 1997 SD 3, ¶10, 558 NW2d 76, 78, this Court held that "[e]xpert witness testimony must be used to establish the causal connection between one's employment and subsequent injury where 'the field is one in which laymen are not qualified to express an opinion.'" Day v. John Morrell & Co., 490 NW2d 720, 724 (SD 1992); Howe v. Farmers Coop. Creamery, 81 SD 207, 212, 132 NW2d 844, 846 (1965)).

> A [worker's] compensation award cannot be based on possibilities or probabilities, but must be based on sufficient evidence that the claimant incurred a disability arising out of and in the course of his employment. As noted above, where the relationship between the work and the injury is not clear, medical expert testimony is required to establish the causal connection.

*Hanten,* 1997 SD 3, ¶18, 558 NW2d at 78(internal citations and quotations omitted).

[¶82.]     This Court has frequently held that the "testimony of professionals is crucial" in establishing the causal relationship. Rawls v. Coleman-Frizzell, Inc., 2002 SD 130, ¶21, 653 NW2d 247, 252; *Day*, 490 NW2d at 724; Lawler v. Windmill Restaurant, 435 NW2d 708, 710 (SD 1989); Wold v. Meilman Food Indus., Inc., 269 NW2d 112, 115 (SD 1978).

[¶83.]     In Westergren v. Baptist Hospital, 1996 SD 69, ¶31, 549 NW2d 390, 368, this Court held:

> By stating that "the testimony of professionals is crucial in establishing this causal relationship" we acknowledged the lack of medical training by lawyers, hearing examiners, and courts to interpret these records. . . . By not deposing these professionals or having them testify at hearing, the parties are likewise limited in the information that might otherwise be available to them.

*See also* Deuschle v. Bak Constr. Co., 443 NW2d 5, 6 (SD 1989) (to establish the causal relationship . . . a finding "must rest on the testimony of professionals" . .)

[¶84.]     I find the majority's reliance on Stormo v. Strong, 469 NW2d 816 (SD 1991) to be unpersuasive. I agree there "are no 'magic words' needed to express an expert's degree of medical certainty, and the test is only whether the expert's words demonstrate that he or she was expressing an expert medical opinion." *Stormo,* 469 NW2d at 824 (citing Drexler v. All Amer. Life & Cas. Co., 72 Wis2d 420, 432, 241 NW2d 401, 408 (1976)). In *Stormo* and in *Drexler*, however, unlike this case, the Court was able to evaluate the sworn testimony of the medical expert. *Stormo*, 469 NW2d at 824; *Drexler*, 72 Wis2d at 425, 241 NW2d at 403.

[¶85.]     While the worker's compensation act is to be liberally construed in favor of the claimant, this rule applies to the law and not to the evidence offered to support the claim. *Hanten,* 1997 SD 3, ¶10, 558 NW2d at 78; *Wold,* 269 NW2d at 116; and Podio v. American Colloid, 83 SD 528, 534, 162 NW2d 385, 388 (1968)).

[¶86.]     The appellant's evidence on causation, resting on an imprecise one-paragraph letter that the doctor did not sign and may not have reviewed after dictating, falls well short of any standard that this Court has previously established in worker's compensation cases. There is no expert medical opinion in any reliable form that establishes causation to a reasonable medical probability.

[¶87.]     In addition, I join the dissent of Justice Zinter.